# WILLIAM FLAKE
## v.
# JOHN B. CARSON.

1. JUDGMENT MUST BE AGAINST ALL *of several defendants, or none.* In an action of assumpsit against two, if there be an appearance by both, the judgment should be against both or neither.

2. APPEARANCE — *what constitutes.* When a party appears for a specific purpose, as to show that he is not properly before the court, he should so restrict his motion. If he makes several motions in the cause, not limiting his appearance to a specific purpose, he will be held to have appeared generally for all purposes.

3. This was a suit against two, only one being served with process. The record recites that the defendants entered their motion to suppress a certain deposition at the February Term, 1862. That at the June Term, 1863, they entered their motion to suppress a certain other deposition, and at the same term entered their motion for a continuance of the cause. At the September Term, 1863, the record recites that the parties by their attorneys waived a jury and put themselves on the court for trial; and it also recites, among the entries of the following day, that the parties herein appearing on yesterday by their attorneys, &c. *Held*, that under the rule above laid down, here was a general appearance by both parties.

4. INTEREST — *upon accounts.* By our statute, interest is not chargeable on an open account where it has not been liquidated and a balance agreed upon.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. C. L. HIGBEE, Judge presiding.

This was an action of assumpsit commenced for the February Term, 1862, of the Fulton Circuit Court, by John B. Carson, against William Martin and William Flake. Service had on Flake; Martin not found.

The declaration counted against defendants as partners, &c., and contained the common counts, for the price of goods, wares and merchandise; for goods and merchandise sold and delivered; for money paid, laid out and expended about the business of defendants at their request; for money lent and advanced to defendants; for money had and received by defendants; for work, labor and services done and performed, and for materials provided for said defendants; for money found to be

due on account stated; and for money found to be due and payable for interest, &c., all in the sum of two thousand dollars.

On the second day of the February Term, 1862, of said Circuit Court, the defendant, William Flake, plaintiff in error, filed the plea of general issue to said declaration.

At the same term, on the third day thereof, the defendants by their attorneys entered their motion to suppress the deposition of James R. Bull, a witness on behalf of plaintiff, which motion was sustained by the court.

On the first day of June, 1863, at the June Term of said Circuit Court, the defendants entered their motion to suppress the deposition of James R. Bull, taken July 15, and filed July 25, 1862, on behalf of said plaintiff, the defendant Flake filing written reasons therefor. The defendants, by their attorneys, at the same term also entered their motion for continuance of said cause. The motion to suppress depositions was overruled by the court, and the cause was continued, by consent of parties, to the next term of said court.

The court record shows that on the second day of the September Term, 1863, of said Circuit Court, the parties by their attorneys and by consent, waived a jury and put themselves upon the court for trial. The court record also shows that on the third day of the said September Term of said court, "the parties herein appearing on yesterday by their attorneys, and waiving their right of trial by jury, and putting themselves upon the court for trial, and the court, after having the cause under advisement," rendered judgment in favor of plaintiff against defendant Flake for $793.30 damages and costs.

.. The bill of exceptions shows that on the trial of said cause on the issues between plaintiff and defendant Flake, the plaintiff, in support of the issues on his part, offered and read in evidence the deposition of James R. Bull, taken July 15th, 1862.

The evidence of said witness is as follows :

. That his name is James R. Bull; age 34 years; business a commission merchant, and residence St. Louis, Missouri; that he is well acquainted with plaintiff, and has known both defendants some ten years; that plaintiff was a commission merchant in St.

Louis, and defendants engaged in the shipment of produce at Ellisville, Illinois; that witness was in the employ of plaintiff as general clerk, from 1852 or 1853 until the summer of 1855; defendants had dealings with Carson from 1853 to 1857; they were engaged buying produce at Ellisville and shipping to plaintiff at St. Louis, for sale, also general merchandising.

Witness is here asked to examine account attached to dedimus and interrogatories, and answer if correct, and particularly as to item of Oct. 26th, 1854, for eight bales of gunnies, at $211.85. He says that he cannot state whether account as a whole is correct. The item of $211.85 [for gunnies] is correct; thinks items in account fair and reasonable, although at date of testimony he was unable to be entirely accurate in his recollection of figures; thinks the business was transacted advantageously by plaintiff; thinks the quantity of corn stated in account of sale correct. The corn was advantageously sold; sold for as much as corn of that quality was selling for at that time. The net proceeds to the credit of defendants on the account of the sales, is correct.

Previous to the last of August, 1854, plaintiff had advanced money to defendants to buy produce and pay their indebtedness to merchants in St. Louis, of whom they bought goods for their store in Ellisville, Ill. Defendants, Martin and Flake, had paid portion of indebtedness thus incurred by sending plaintiff drafts, money and produce. As agent of plaintiff he went to Ellisville to settle balance in some way; found but one of defendants (Flake) at home; showed account, which he admitted to be correct; Flake said they had no money, but a lot of corn at Copperas Creek, which he placed in Carson's possession as collateral for the debt; he gave him an order in favor of plaintiff for —— bushels of corn in warehouse; he went to Copperas Creek the next day; the order was accepted and entered on warehouse books to plaintiff's name; the corn remained in store till January, 1855, when it was brought to St. Louis for sale, and placed as collateral, as per agreement, in plaintiff's possession; it was stored in bulk, and the invoice of sacks, October 26, 1854, was sent up for sacking, that it might be brought down to market; he thinks it was part of agreement that whenever it was brought

Flake *v.* Carson.

to market, plaintiff was to furnish sacks — that is, procure them; at any rate, it could not have been brought to market without them. At the time he went to Ellisville balance due plaintiff was between $1,400 and $1,500, which was acknowledged to be correct. To this add the bill of sacks, Oct. 26, 1854, $211.85, and the item of interest in the account, April 4, 1857, $271.26, and deduct the two credits, Dec. 30, 1854, $4.20, and Feb. 7, 1855, $1,023.40, and it leaves the balance $861.40, which he believed to be the amount due plaintiff.

Upon cross-examination of said witness, he states that the statements about gunnies are of his own knowledge, derived from transacting business of plaintiff.

He said: I know what I state about corn in the same manner I do about gunnies. I refer to the lot of corn in store at Copperas Creek, which Martin and Flake placed in my hands as collateral for a debt they owed plaintiff as stated. I found the corn in the warehouse at Copperas Creek. It was shipped from there and consigned to plaintiff. Don't know who gave the order for shipment. It was shipped last of January or first of February. Freights were generally high that season. Don't remember what freight was paid in this case. I think corn was selling at about fifty-five cents per bushel at that time. Don't know what corn was worth for next six months after.

The plaintiff also offered and read in evidence the account attached to the deposition of said witness Bull, as exhibit "A," and the agreement indorsed on the back of such account.

[Said account bears date April, 1857, and is in favor of plaintiff, against Martin and Flake, and contains a debit column footing up at $5,398.82, and a credit column footing at the same, less the "balance due" item of $861.60. The debit column contains, under subsequent dates to August, 1854, an item for "eight bales gunnies, $211.85;" October 26, 1854, and item dated April 4, 1857, "to balance interest to date, $271.26;" and the credit column shows an item of $4.20, December 30, 1854, for "40 gunnies returned by Smith & Co.," and an item of $1,023.40, February 7, 1855, for "net proceeds of 1,954 sacks corn." And these are all the items of the account, either debit

or credit, subsequent to April, 1854. Apart from items just specified, the debit column of the account foots up $4,915.71, and the credit column foots $3,509.62, leaving a balance in favor of the debit column of $1,406.09, which shows the balance in favor of plaintiff in August, 1854.]

The agreement indorsed on the back of said account, and read in evidence as aforesaid, is as follows:

"It is admitted that the within items are correct, and so to be considered on the trial of a cause where suit has been brought thereon by John B. Carson against Martin & Flake, and now pending in the Fulton Circuit Court, except as to the item for eight bales gunnies at $211.85, and that the said Martin & Flake claim damages on 1,959 sacks corn stated at $1,023.10, about which two matters no admissions are made, except that the corn was received by Carson, and the quantity of corn is admitted to be 3,907 bushels."

"MARTIN & FLAKE,
"JOHN B. CARSON,
" By Ross & SHOPE, his attorneys."

"February 12, 1858."

The plaintiff here rested his case.

The defendant Flake then called as a witness on his part *Martin Eichelberger*, whose testimony was as follows: I am and have been a merchant for twelve or fifteen years; during that time I have dealt much in produce, and shipped from this county to St. Louis, Missouri; have been familiar with warehouse charges for storage, forwarding, &c., and with river freights and commission merchants' charges during that time for corn and other produce; Copperas creek is in this (Fulton) county; one cent and a half was good, full price per sack of corn during 1854 and 1855, and still would be for warehouse charges on and for forwarding corn from Copperas creek or elsewhere, from fore part of August, 1854, to fore part February, 1852; this would be double storage; three-fourths cents per sack for three months is the usual charge; from fifteen cents to twenty cents per sack was high freight from Copperas creek to St. Louis in 1854, or at any time; low freight for corn during those or other years

would be ten cents per sack between those points, and moderate freight twelve cents per sack; a sack of corn contains two bushels or over; two cents on the dollar on the proceeds of the sale of corn or produce in St. Louis was, in 1854 and 1855, and still is, a fair round price for all the commission merchants' and other charges in St. Louis, and all that was then or is now customary to be charged; don't know whether freights were high or low in fall of 1854 and winter of 1854 and 1855, on Illinois river; the charges spoken of by me, that is, warehouse charges, freight and commission merchants' charges, include everything chargeable on produce shipped from Fulton county to St. Louis for sale.

The defendant then called *George Sheaver*, who testified in substance as follows: I reside in Fulton county, Illinois, at Ellisville, and have for some years; did in 1854 and 1855; am a merchant, and was at those dates; dealt those years, and have before and since, largely in corn and other products; shipped to St. Louis and sold; my shipping point was Copperas Creek; same place where Martin & Flake shipped from; I know what warehouse charges were on Illinois river, especially at Copperas Creek in '54 and '55, for storage and forwarding; one cent and a half per sack was full price for corn from forepart of August, 1854, to forepart of February, 1855, for storage for that time, including shipping, and all it was worth; three-fourth cents per sack, for three months, was the usual charge for storage and forwarding; know what freights to St. Louis were those years, and am familiar with prices charged those years in St. Louis by commission merchants, for all charges on grain received and sold by them; two cents on the dollar for the gross sales, per St. Louis charges, was the highest and customary price for St. Louis merchants, and all it was worth; this has been the usual price charged by them for years past; freights on the Illinois and Mississippi rivers were low during the latter part of 1854 and the forepart of 1855; they were low in January and February, 1855; rivers were high latter part of 1854 and spring of 1855, and did not close up; freights on corn from Copperas Creek, Fulton county, Illinois, to St. Louis,

during that time, were from 12 to 15 cents per sack; a sack of corn contains two bushels or over; at any time 15 to 20 cents per sack would be high freights detween these points.

Defendant then called *S. P. Shope*, as a witness, who testified as follows: I am an attorney-at-law, and one of plaintiff's attorneys in a former suit in this court where the same account was in litigation; I signed the agreement on the back of the account marked "A," in the name of "John B. Carson, by Ross & Shope as attorneys for plaintiff," and defendant Martin signed the firm name of Martin & Flake; at the time this agreement was signed (February 12, 1858), it was with the express understanding between the parties that it was made only for the trial in the case then pending, and that case was dismissed.

Plaintiff then called *S. S. Tipton*, who testified: I am one of plaintiff's attorneys; that in a conversation with defendant, Flake, he told me that he intended litigating the item for gunnies and the credit for corn, but that the balance of the account was not questioned.

Upon cross-examination, witness testified: I had the deposition of Bull, with account attached in his hand, at the time of the conversation; Flake did not examine the account; he said nothing about interest item; in same conversation also, defendant, Flake, said there was not sufficient credit for the corn; said there was not enough allowed, and claimed a great deal more for the corn; he also denied the charge for gunnies.

And this was all the evidence in the case, and thereupon the court found the issues for the plaintiff, and assessed the damages at $793.30. Whereupon said defendant, Flake, moved the court for a new trial, assigning, in support thereof, the following reasons: That the finding of the court was against the law and the evidence; but the court overruled the motion for a new trial, and rendered judgment against the defendant, William Flake, for the said sum of $793.30, to which refusal to grant a new trial and the rendition of said judgment, said defendant, Flake, then and there excepted.

The defendant, Flake, brings the case to this court by writ of error, and assigns the following errors:

1st. The finding of the court below was against the law and the evidence.

2nd. The Circuit Court erred in overruling the motion for a new trial.

3rd. The Circuit Court erred in rendering judgment in favor of the plaintiff below and against the defendant, Flake.

4th. The judgment should have been for the defendant, Flake, below.

5th. The Circuit Court erred in rendering judgment against defendant, Flake, alone.

6th. The judgment should have been rendered against both defendants below (Martin and Flake), if rendered at all.

7th. The record and proceedings below are otherwise informal, irregular and insufficient.

Messrs. JUDD, BOYD & JAMES, for the plaintiff in error.

Messrs. ROSS, TIPTON & WINTER, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit for goods, wares and merchandise sold and delivered, for money, and on an account stated, and for interest, against the plaintiff in error impleaded with William Martin as partners. Flake was alone served with process, and he pleaded to the action, and judgment was rendered against him alone.

It is insisted by the plaintiff in error that as the record shows an appearance by both defendants, the judgment should have been against both or neither. This is the rule as we understand it. *Fuller* v. *Robb et al.*, 26 Ill. 248, and cases cited.

But what is the evidence of this appearance by both defendants, one of them alone having pleaded?

The record recites that the defendants entered their motion to suppress a certain deposition at the February Term, 1862; that at the June Term, 1863, they entered their motion to suppress a certain other deposition, and at the same term entered their motion for a continuance of the cause. At the September Term,

1863, the record recites that the parties by their attorneys waived a jury and put themselves on the court for trial; and it also recites among the entries of the following day that the parties herein appearing on yesterday by their attorneys, &c.

On the strength of the cases of *Frazier* v. *Resor et al.*, 23 Ill. 89, and *Abbott* v. *Semple*, 25 id. 107, we are compelled to hold there was an appearance by both parties. In the last case we said, when a party appears for a specific purpose, as to show that he is not properly before the court, he should so restrict his motion. If he makes several motions in the cause, not limiting his appearance to a specific purpose, he will be held to have appeared generally for all purposes.

An objection is made as to the allowance of interest. We do not see the propriety of the charge for interest. By our statute interest is not chargeable on an open account when it has not been liquidated and a balance agreed upon. This account has never been adjusted, but remained open, some items in it being denied.

It would seem also, from the testimony of Eichelberger and Sheaver, that some mistake has been made in the credits entered upon the accounts. If the defendants are not precluded by the admissions made in another cause which was dismissed, they are certainly entitled to larger credits than have been given them. As to the controversy about the gunny bags, it is clear the price of them was deducted from the proceeds of the corn.

The judgment is reversed and the cause remanded.

*Judgment reversed.*