BROOKS *v.* DUN *et al.*

*(Circuit Court, W. D. Tennessee.   June 3, 1892.)*

SERVICE OF PROCESS—NONRESIDENT PARTNERSHIP—SERVICE ON AGENT.
 Mill. & V. Code Tenn. §§ 3516, 3539, which authorize the service of process on any agent or clerk where the corporation, company, or individual has an office or agency in any county other than that in which the chief officer or principal resides, does not apply to a company other than a corporation or individual residing in another state or foreign country.   If such substituted process be constitutional as to citizens of Tennessee within the territorial limits of the state, it cannot be as to citizens of another state, and such a statute violates the fourteenth amendment of the constitution of the United States, and the service is not due process of law.

At Law.   This is an action of damages, originally brought by the plaintiff, a merchant at Memphis, in the circuit court of Shelby county, Tenn., the summons running against "R. G. Dun & Co., the mercantile agency;" and the return of the sheriff shows that it was "executed on S. Patterson, manager of R. G. Dun & Co., of the agency in Memphis, Tennessee, by making known to him the contents" thereof.   By the first count of his declaration, plaintiff avers a cause of action against "defendants R. G. Dun & Co. and the mercantile agency, being a partnership association doing business in the city of Memphis, Tenn.," and by the second count he "further sues defendant R. G. Dun & Co. as partners under the style of the 'Mercantile Agency.'" At the return term, defendants by attorney "move to dismiss this cause for want of jurisdiction of the persons of the defendants, and for cause of such motion they say that the service of the summons was made on one S. Patterson, instead of having been made on the defendants, all of

which appears of record in this cause," and on the same day defendants " R. G. Dun & Co." filed a petition and bond in the state court for the removal of the suit to this court, and an order was subsequently made, so removing it. This petition shows "that the controversy in said suit is between citizens of different states, and that these petitioners were at the time of the commencement of this suit, and still are, citizens and residents of the state of New York, and that plaintiff, William S. Brooks, was at the time of the commencement of this suit, and still is, a citizen and resident of the state of Tennessee." The record nowhere discloses who composed the "partnership association," or what persons are the " partners " referred to in the declaration. Upon the filing of the transcript here, defendants renewed their motion " to dismiss for want of proper service," and filed in support of it the affidavit of the said Patterson " that he is not now, and never has been, a member of the firm of R. G. Dun & Co., but is now, and was at the time this suit was instituted, an agent for said firm, in the performance of certain duties and services; that said firm of R. G. Dun & Co. never conferred on him any power or authority to accept service of any sort of legal process, * * * and that he is not charged with the duty of attending to or representing them in their lawsuits, * * * all such matters being beyond the scope of the agency of this affiant." Plaintiff subsequently moved to remand the suit to the state court, which motion was overruled. This motion to dismiss, made here and in the state court, has been twice argued.

*John J. Dupuy* and *Gantt & Patterson*, for plaintiff.

*T. B. Edgington & Son*, for defendants.

HAMMOND, District Judge. The decision of this motion involves two questions: *First*, whether the service by the sheriff is sufficient to give the court jurisdiction of the defendants; and, *second*, whether there has been such an appearance by the defendants as will waive any irregularity in the service if such be found to exist. · If the latter question is resolved against the defendants, it will, of course, be unnecessary to consider the former. The removal here was under the provisions of the late judiciary act of March 3, 1887, and apart from the objection raised by this motion the case is properly here. No objection is made to the form in which defendants present this question for adjudication, and indeed such objection could not successfully be made, as it seems to be now well settled by all the later cases that at law it is quite immaterial whether this defense be made by motion to set aside the return of the officer, or to quash the return, or to dismiss the suit for want of service or for want of jurisdiction of the court over the parties, or by special plea or answer, or by plea in abatement; and if necessary in a given case, to give effect to the intention of the parties, the court will consider such a defense as properly presented though irregularly made. The difficulties attending the procedure in equity, under our practice, where appearances are general or special, do not arise here. Since the decision in *Harkness* v. *Hyde*, 98 U. S. 476, the federal courts,

at least in cases at law, have not generally favored the doctrine of
waiver of service of process by defendant's appearance to raise objection
thereto, in whatever form; and this, notwithstanding his subsequent
defense upon the merits of the action, after the former objection has
been overruled. · That was a suit for damages, in which summons with
copy of the complaint was served by the sheriff on defendant at his res-
idence "on the Indian reservation," which the court finds was "be-
yond the jurisdiction, legislative or judicial, of the government of
Idaho." Defendant moved to dismiss the action on this ground in the
district court of the territory, which motion being overruled, he de-
fended on the merits, and the case was taken to the United States su-
preme court for a review of this ruling. Justice FIELD, in delivering
the opinion of the court, says:

"The service was an unlawful act of the sheriff. The court below should
therefore have set it aside, on its attention being called to the fact that it
was made upon the defendant on the reservation. The motion was to dis-
miss the action; but it was argued as a motion to set aside the service, and
we treat it as having only that extent. * * * The right of the defend-
ant to insist upon the objection to the illegality of the service was not waived
by the special appearance of counsel for him to move the dismissal of the
action on that ground, or what we consider as intended, that the service· be
set aside, nor when that motion is overruled by their answering for him to
the merits of the action. Illegality in a proceeding by which jurisdiction is
·to be obtained is in no case waived by the appearance of the defendant for
the purpose of calling the attention of the court to such irregularity. * * *
It is only when he pleads to the merits in the first instance, without insist-
ing upon the illegality, that the objection is deemed to be waived."

But it is insisted with great earnestness that the proceeding taken by
the defendants to remove the case from the state court by presenting
their petition and filing their bond there, and procuring the action of
the state court and following the case here, was an appearance inde-
·pendent of the motion made by them there and here, and waived any
irregularity in the service. But on this precise question the decisions
are substantially uniform the other way. It is plain that such a rule
would be a limitation upon the jurisdiction of this court, and deprive
the party of the right to have heard here one of the most important
questions in his case. There might be cases where the appearance to
remove would ·obviate the service of process, possibly, but not in one
where the territorial domination or dominion over the defendant is de-
nied. *Parrott* v. *Insurance Co.*, 5 Fed. Rep. 391, 392; *Blair* v. *Turtle*,
Id. 394, 398; *Atchison* v. *Morris*, 11 Fed. Rep. 582, 585; *Small* v. *Mont-
gomery*, 17 Fed. Rep. 865, 866; *Hendrickson* v. *Railway Co.*, 22 Fed.
Rep. 569, 570; *Miner* v. *Markham*, 28 Fed. Rep. 387, 395; *Hankinson*
v. *Page*, 31 Fed. Rep. 184; *Perkins* v. *Hendryx*, 40 Fed. Rep. 657; *Clews*
v. *Iron Co.*, 44 Fed. Rep. 31, 32; *Forrest* v. *Railroad Co.*, 47 Fed. Rep.
1, 2.

This brings us to the main question, whether partners who are non-
residents of the state, and not found within its limits, but who are do-
ing business in the state and have an office and agent therein, can· be

brought into court as defendants in a simple action for damages by a service upon their resident agent of process, whereby the sheriff is commanded to summon them. In this suit there has been no attachment or other proceeding to subject their property in the state, either real or personal, to the security or satisfaction of the damages sued for; and, indeed, there is nothing in this record showing either directly or by implication that these defendants have any property whatever in the state. The suit is therefore in no sense, either in form or effect, an action *in rem*, and the perplexing questions which often arise in such cases are not presented here. For the plaintiff, it is urged that the statutes of the state authorize such a service of original or leading process as was made here, and that the court thereby has acquired jurisdiction of the case and over the defendants, while their contention is that the statute so relied upon applies only to corporations, and that, if it be construed to include individuals, it is to that extent, at least, unconstitutional, because it would deprive them of their property "without due process of law," (Const. U. S. amend. 5,) and not according to "the law of the land," (Const. Tenn. art. 1, § 8.) The following is the provision of the Tennessee Code relied upon to support the service made in this case:

"When a corporation, company, or individual has an officer or agency or resident director in any county other than that in which the chief officer or principal resides, the service of process may be made on any agent or clerk employed therein, in all actions brought in such county against said company, growing out of the business of or connected with said company or principal's business." Thomp. & S. Code, § 2834*a;* Mill. & V. Code, §§ 3516, 3539.

The words "in such county," last quoted, do not appear in the revision of Thompson & Steger, but do in that of Milliken & Vertrees. The entire provision is most inartificially drawn, as will be seen by a careful reading of it, and the word "officer" first occurring in the section has been construed to mean "office." *Toppins* v. *Railroad Co.*, 5 Lea, 600; *Railroad Co.* v. *Walker*, 9 Lea, 475. The first act of the legislature of the state on the subject of service of process upon corporations was that passed January 8, 1846, c. 55, entitled "An act concerning corporations," and it authorized service "on the president or other head of a corporation, or in his absence on the cashier, treasurer, or secretary, or in the absence of such officers on any director of such corporation." Thomp. & S. Code Tenn. § 2831; Mill & V. Code, § 3536. An act supplemental to this was passed January 23, 1850, c. 136, which provided "that, in addition to the corporate officers named, * * * service of leading process on the chief agent of the corporation residing at the time of service in the county where the action is brought shall be deemed a sufficient service," etc., provided the officers named in the original act do not reside in the county. Thomp. & S. Code Tenn. §§ 2832, 2833; Mill. & V. Code, §§ 3537, 3538. These two acts were subsequently amended by the act of February 21, 1852, c. 136, by allowing service upon the agent whether the president or other officers named in the

original and supplemental acts cited resided in the county or not; and its provisions were in terms made to apply "as well to foreign as to domestic corporations." This, therefore, leaves no doubt that, in the codification of our state laws, both the codifiers and the legislature intended the Code provisions to apply equally to foreign and domestic corporations; and this last act of 1852 is the original basis for such provisions, and gives no occasion for construction to ascertain their meaning.

The first Code of Tennessee was enacted by the legislature in 1858, and took effect on May 1st of that year. Its provisions regulating "process against corporations" were embraced in sections 2831–2834, the latter section being as follows:

"When a corporation, company, or individual has an office or agency in the county other than that in which the principal resides, the service of process may be made on any agent or clerk employed therein, in all actions growing out of or connected with the business of the office or agency."

This provision of the Code does not seem to have been taken from any previous act, but first appears in the old Code as one of the statutes of our state, having been originally passed in that form. By an act passed March 19, 1860, c. 89, entitled "An act to amend sections 2831, 2832, 2833, and 2834 of the Code," the provision under consideration became the law in its present form, as first above quoted. Taking this legislation together, and it is apparent, notwithstanding the words used in sections 2834, 2834a, Thomp. & S. Code, and section 3539, Mill. & V. Code, that the intention of the legislature was simply to provide a method of service of process upon corporations subject to suit in the courts of the state. Its provisions have been the subject of consideration by the supreme court of the state, both in the case of foreign and domestic as well as municipal corporations; but counsel have cited no case, nor have I been able to find one, where a service has been attempted, even, under the provisions of this legislation, upon individuals or partners or joint defendants through an agent. It is only where a corporation is to be brought in that the service thus provided for has been had upon an agent, as the cases all show. *Toppins* v. *Railroad Co.*, *supra; Railroad Co.* v. *Walker*, *supra.* The language of the sections, original and amended, so far as it may relate, in any view, to a "company" or "individual" not "a corporation," is seemingly confined to "a company" or "individual" residing in Tennessee; for the company or individual must have an "office" or "agency" in "any county other than that in which the * * * principal resides." Evidently, this implies that the "principal," be it company or individual, resides in some county of the state, and it does not refer to some principal residing in some county in another state or foreign country. As already indicated, the legislation of the state shows that these provisions for serving domestic corporations, as they originally stood, were by an express act for that purpose, thought of course to be necessary, extended to foreign "corporations," (Act Feb. 21, 1852, c. 136,) but that act has not extended them to foreign "companies" or "individuals." The word "corporation," therefore, used by the codifiers, interpreted by the legislation they were codifying, means

either a foreign or domestic corporation; but it does not at all follow that the *addendum* they made to the then existing legislation as to "corporations," by including "companies" or "individuals" along with them, shall likewise include nonresidents or foreigners. Service of process upon "companies" or "individuals" can be made without legislation upon the persons, but service on "corporations" must be by legislation authorized and regulated, and we must not confuse these separate purposes of the Code,—one to authorize and regulate the service of process on corporations, and the other, at the very most that can be claimed for it, providing a very limited substituted process for companies and individuals; that is to say, a service not personal in the sense of the common or general law governing the service of process on individuals, but something else than this in place of it, as where some statutes authorize service on a wife or other person residing at the domicile of the defendant, or by nailing the process to the door, or the like. It is my opinion that the substituted process so provided by this act for "companies" and "individuals" was not intended for any nonresident or foreign "company" or "individual" not "a corporation," whatever may be said of it.

But if this provision of the Tennessee Code ought to be so construed as to authorize a service of process for nonresident partners, in a case like this, upon their resident agent, without any attachment of or proceeding against their property, or if such construction had been given to it by the supreme court of the state, this court would not necessarily be bound to follow it, or to so adjudge, as its constitutionality would still be open to consideration here. Since the leading case of *Pennoyer* v. *Neff*, 95 U. S. 714, (decided by the supreme court of the United States in 1877,) it seems to be well settled that a personal judgment against a nonresident in a suit where no service was had on him in the state, and he has not appeared in the suit, is without any validity. The facts in that case were, in brief, these: Mitchell sued Neff, a nonresident of Oregon, in a court of that state, upon an account, and service was had by publication according to the provisions of the Oregon Code. Neff was not served with process, and did not appear. He owned realty in that state, but it was not attached. Judgment by default went against him, his real estate was sold under execution issued upon the judgment, and Pennoyer became the purchaser. In ejectment by Neff against Pennoyer the latter's title depended wholly upon the regularity of the proceedings in the suit of Mitchell against Neff, which was adjudicated in plaintiff's favor in the court below, and Pennoyer sued out a writ of error to the supreme court, which affirmed the judgment on the broad ground that, while the proceedings were regular under the Code of the state in the suit in which the original judgment was obtained against Neff, yet the judgment was invalid because "rendered in one state in an action upon a simple contract against the resident of another without service of process upon him, or his appearance therein." Mr. Justice FIELD, speaking for the court, in reply to the argument that such judgments are valid within the state where rendered, says:

"Be that as it may, the courts of the United States are not required to give effect to judgments of this character when any right is claimed under them. Whilst they are not foreign tribunals in their relations to the state courts, they are tribunals of a different sovereignty, exercising a distinct and independent jurisdiction, and are bound to give to the judgments of the state courts only the same faith and credit which the courts of another state are bound to give to them."

And in defining in such connection the words "due process of law," occurring in the amendments to the federal constitution, the opinion uses this language:

"Whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They then mean a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or his voluntary appearance."

In Webster v. Reid, 11 How. 437, (cited in the above case,) the judgments under consideration were had in suits against "the owners of half-breed lands lying in Lee county," without naming them, and proof was offered below "that no service had ever been made upon any person in the suits in which the judgments were rendered," but notice by publication in a newspaper was authorized by act of the Iowa legislature. These suits were simply in personam against the owners of the land. Per curiam:

"Whether they all resided within the territory or not does not appear, nor is it a matter of any importance. No person is required to answer in a suit on whom process has not been served, or whose property has not been attached. In this case, there was no personal notice, nor an attachment or other proceeding against the land, until after the judgments. The judgments, therefore, are nullities, and do not authorize the executions on which the land was sold."

D'Arcy v. Ketchum, 11 How. 165, is also cited approvingly in Pennoyer v. Neff, supra. In that case, D'Arcy and Gossip were partners doing business in New York, and were there sued on a bill of exchange. Gossip was served with process, but D'Arcy, who was a citizen and resident of Louisiana, was not; Gossip first pleaded general issue, but at the trial made default, and judgment was rendered against both. A statute of New York provided that "where joint debtors are sued, and one is brought into court on process, he shall answer the plaintiff; and, if judgment shall pass for plaintiff, he shall have judgment and execution not only against the party brought into court, but also against other joint debtors named in the original process, in the same manner as if they had all been taken and brought into court by virtue of such process." Upon this judgment, D'Arcy was sued in Louisiana in the United States

circuit court, and pleaded "that the judgment sued upon is not one upon which suit can be brought against the defendant in this court." This plea was overruled in the circuit court, but on writ of error was sustained by the supreme court, CATRON, J., delivering the opinion of the court. And in *Harkness* v. *Hyde, supra,* the facts of which have been stated, the court, in affirming the decision in *Pennoyer* v. *Neff, supra,* uses this language:

"There can be no jurisdiction in a court of a territory to render a personal judgment against any one upon service made outside its limits. Personal service within its limits, or the voluntary appearance of the defendant, is essential in such cases. It is only where property of a nonresident or of an absent defendant is brought under its control, or where his assent to a different mode of service is given in advance, that it has jurisdiction to inquire into his personal liabilities or obligations without personal service of process upon him, or his voluntary appearance in the action."

The case of *Insurance Co.* v. *Bangs,* 103 U. S. 435, commenced in the state court of Minnesota, and removed to the federal court, was an action on two policies of life insurance. While pending there the insurance company filed a bill in equity in the United States circuit court in Michigan against the plaintiff, a minor son of the insured, to whom the policies were payable, (joining his mother as a defendant therein,) to cancel the policies. The chancery subpœna was never personally served on the defendant, but was served on his general guardian after the ward had left Michigan and gone to Minnesota to reside. The guardian not making any appearance for his ward, a guardian *ad litem* was appointed, who defended. The ward possessed no property in Michigan. A decree was entered there, canceling the policies for fraud in their procurement; and defendants, the son and mother, were perpetually enjoined from proceeding to collect the policies in any action at law upon them. In the Minnesota suit, this decree of the Michigan court was set up in its answer by the company. Plaintiff demurred, his demurrer was sustained below, and the judgment affirmed by the supreme court. The statute of Michigan required a general guardian to "appear for and represent his ward in all legal suits and proceedings, unless when another person is appointed for the purpose as guardian or next friend." But Mr. Justice FIELD, in the opinion of the court, says that this statute "does not change the necessity of service of process upon the defendants in a case before a court of the United States where a personal contract alone is involved. It may be otherwise in the state courts. It may be that by their practice the service of process upon the general guardian, or his appearance without service, is deemed sufficient for their jurisdiction. We believe that in some states such is the fact, but the state law cannot determine for the federal courts what shall be deemed sufficient service of process or sufficient appearance of parties. Substituted service by publication against nonresident or absent parties, allowed in some states in purely personal actions, is not permitted in the federal courts. Such service can only be resorted to when some claim or lien upon real or personal property is sought to be enforced, and the decision

of the court will then only affect property of the party within the district. Rev. St. U. S. § 738." In *Pana* v. *Bowler*, 107 U. S. 529, 545, 2 Sup. Ct. Rep. 704, a decree was rendered upon publication addressed to "the unknown owners and holders of bonds and coupons issued by the town of Pana" in a proceeding in Illinois, purely *in personam*, and it was held to be absolutely void as to nonresidents of the state upon whom there was no service, and by whom there was no appearance; the court citing *Cooper* v. *Reynolds*, 10 Wall. 308; *Pennoyer* v. *Neff, supra; Brooklyn* v. *Insurance Co.*, 99 U. S. 362; *Empire* v. *Darlington*, 101 U. S. 87; and *St. Clair* v. *Cox*, 106 U. S. 350, 353, 1 Sup. Ct. Rep. 354. The judgment in controversy in *Hart* v. *Sansom*, 110 U. S. 151, 3 Sup. Ct. Rep. 586, was rendered in an action in equity to remove a cloud upon title to realty, and the only service was by publication in the form authorized by the Texas statutes against nonresidents, and the decree was *in personam* merely. Held, in a suit upon it in the federal court, that the judgment was void; the court saying:

"The judgment would be allowed no force in the courts of any other state; and it is of no greater force, as against a citizen of another state, in a court of the United States, though held within the state in which the judgment was rendered."

*Freeman* v. *Alderson*, 119 U. S. 185, 7 Sup. Ct. Rep. 165, was an action of trespass to try title to and recover possession of realty in Texas. Plaintiffs claimed under a sheriff's deed made on sale under an execution. The defendant in the original judgment was a nonresident. He was not served with process, made no appearance, but was cited by publication. The plaintiffs then recovered an undivided half of the land in question, and a judgment for costs against defendant, on which the execution was issued, and to satisfy which defendant's half of the land was sold. By the court:

"The judgment, so far as the costs are concerned, must therefore be treated as a judgment *in personam;* and, for the reason stated, it was without any binding obligation upon the defendant, and the execution issued upon it did not authorize the sale made, and, of course, not the deed of the sheriff."

But as to the remaining portion of the judgment the court says:

"The service of citation by publication may suffice for the exercise of the jurisdiction of the court over the property so far as to try the right to its possession, or to decree its partition."

So, in *Huling* v. *Improvement Co.*, 130 U. S. 559, 9 Sup. Ct. Rep. 603, where the proceeding was for the condemnation of land for a railroad, and publication was made under the statute of Kansas, it was held to be due process of law, so far as it affected the real estate of a nonresident of the state within which the property lies. And in an action to quiet title to land in Nebraska, and recover its possession, it was decided in *Arndt* v. *Griggs*, 134 U. S. 316, 10 Sup. Ct. Rep. 557, that service by publication to nonresidents under the state statute was sufficient. *Mellen* v. *Iron Works*, 131 U. S. 352, 9 Sup. Ct. Rep. 781, and the cases of *Pennoyer* v. *Neff, supra, Hart* v. *Sansom, supra,* and *Huling* v. *Improvement Co.*, were cited in support of the decision. The Nebraska statute here was

very similar to the act of congress on the same subject. Section 8, c. 137, approved March 3, 1875, (18 St. p. 470.)

The latest decision of the supreme court on this subject is in *Grover, etc., Co. v. Radcliffe,* 137 U. S. 287, 11 Sup. Ct. Rep. 92, (decided at the October term, 1890.) The facts are as follows: James Benge, a citizen of Pennsylvania, and John Benge, a citizen of Maryland, executed a bond to the plaintiff company, in which they authorized "any attorney of any court of record in the state of New York, or any other state, to confess judgment" against them on the bond in case of breach of its conditions. A prothonotary of a court in Pennsylvania entered judgment upon the bond without the filing of any declaration or issuance of process, or any appearance by the makers; the statute of that state making it his duty to do this "on the application of any person being the original holder of a note, bond, or other instrument of writing, in which judgment is confessed, or containing a warrant for an attorney at law or other person to confess judgment." The plaintiff company sued on this judgment in Maryland. Judgment was rendered against it by the courts of that state, and the case was taken by writ of error to the supreme court of the United States, which affirmed the judgment below; FULLER, C. J., saying:

"It is settled  *  *  *  that a personal judgment is without validity if rendered by a state court in an action upon a money demand against a nonresident of the state, upon whom no personal service of process within the state was made, and who did not appear."

And again:

"John Benge was a citizen of Maryland when he executed this obligation. The subject-matter of the suit against him in Pennsylvania was merely the determination of his personal liability, and it was necessary to the validity of the judgment, at least elsewhere, that it should appear from the record that he had been brought within the jurisdiction of the Pennsylvania court by service of process, or his voluntary appearance, or that he had in some manner authorized the proceeding."

The court holding that the authority given by the bond to an attorney of a court of record to confess judgment did not authorize the prothonotary of court to do so. See, also, *Hall v. Lanning,* 91 U. S. 160, 168; *Mohr v. Manierre,* 101 U. S. 417, 422; *Smith v. Woolfolk,* 115 U. S. 143, 149, 5 Sup. Ct. Rep. 1177; *Renaud v. Abbott,* 116 U. S. 277, 6 Sup. Ct. Rep. 1194, where this question is discussed.

Since the case of *Pennoyer v. Neff, supra,* the question there decided has been often before the circuit courts, and in various forms, and their decisions have been uniformly adverse to the validity of service in such cases as this without personal service of the defendant in the state where the suit is brought, or his voluntary appearance therein. *Bunnell v. Bunnell,* 25 Fed. Rep. 214; *U. S. v. American Bell Tel. Co.,* 29 Fed. Rep. 17, 31, 32; *Clark v. Hammett,* 27 Fed. Rep. 339; *Hankinson v. Page,* 31 Fed. Rep. 184; *Perkins v. Hendryx,* 40 Fed. Rep. 657. And even where personal service was actually made on the nonresident defendant at a time or place or under such circumstances as exempted him from service,

similar rulings have been made, as where service was made in another state than that in which the suit was brought, (*Parrott* v. *Insurance Co.*, 5 Fed. Rep. 391; *Wilson* v. *Seligman*, 36 Fed. Rep. 154,) or upon a non-resident while upon compulsory attendance upon a court of the state, as defendant in a criminal prosecution, (*Blair* v. *Turtle*, 5 Fed. Rep. 394,) or as a witness, (*Atchison* v. *Morris*, 11 Fed. Rep. 582; *Small* v. *Montgomery*, 17 Fed. Rep. 865,) or was temporarily in the state on his way to the national capitol, as a member of congress. The authorities are well summarized in a late work on judgments. Black, Judgm. §§ 220–222, 906, 997.

But it is not proper to dismiss this suit because of this void service. The most that should be done is to set aside and vacate the service. The plaintiff has a right to sue anywhere he may choose. Whether he can get service of process may be another matter. If he does, he may go on. If he does not, he may dismiss or wait until he can find the defendant within the jurisdiction. There is no penalty attached to defective service that the suit shall be dismissed. It is enough to set it aside. Whether the defendant, who may, as we have seen, specially appear to vacate a void service, may also specially appear to move to dismiss for want of prosecution, or because the plaintiff has been unable to find him within the jurisdiction, or because it is shown that he is a nonresident, need not be now decided. Possibly he cannot. If he specially appear and move to dismiss when he should only have moved to set aside the proper service, the court will not treat him as waiving service by his improper motion, but will vacate the service. That was precisely the case in *Harkness* v. *Hyde, supra,* and the supreme court went no further than to order that the service be set aside. The same order will be entered in this case, and the three other cases just like it, depending upon the same illegal service. So ordered.