## DUNN ET AL., EXECUTORS, v. DILKS, EXECUTRIX.

[No. 4,683. Filed November 24, 1903.]

JUDGMENTS.—*Revival.—Merger.—Scire Facias.*—Where judgment was rendered on a note and such judgment revived by writs of *scire facias*, the note was merged in the original judgment, and that judgment was merged into the succeeding ones.  *p. 678.*

SAME.—*Foreign Judgments.—Enforcement.—Scire Facias.*—A suit can not be maintained in this State upon a judgment rendered in Pennsylvania upon returns of *nihil* to two successive writs of *scire facias* issued to revive the judgment, where the defendant at the time of the issuing of the writs was a resident of Indiana, and out of the jurisdiction of the court that rendered the judgment. *pp. 674-685.*

From Marion Circuit Court (10,452); *H. C. Allen,* Judge.

Action by R. W. Dunn and others, executors of the estate of John S. McCray, deceased, against Eleanora Dilks, executrix of the will of John H. Dilks, deceased. From a judgment in favor of defendant, plaintiffs appeal. *Affirmed.*

*A. C. Ayres, A. Q. Jones, J. E. Hollett, J. H. Osmer, A. R. Osmer, N. F. Osmer* and *G. W. Blain,* for appellants.

*F. E. Gavin, T. P. Davis* and *J. L. Gavin,* for appellee.

WILEY, P. J.—A demurrer for want of sufficient facts was sustained to appellants' amended complaint, and, they refusing to plead over, judgment was rendered against them for costs. Sustaining the demurrer to the amended complaint is assigned as error.

The complaint, together with the exhibits and exemplifications, is voluminous, but the facts as stated in the complaint upon which the decision must rest may properly be stated in few words. On August 11, 1871, the deceased, John H. Dilks, and Robert Sutton executed their joint note, payable to James S. McCray, now deceased, due ninety days after date, for $1,025. This note contained the following clause: "And we empower any attorney of record in this commonwealth, or elsewhere, to appear for us and confess judgment against us for the above sum, together with the ten per cent. additional, with cost of suit, release of errors, and without stay of execution."

The note shows on its face that it was executed in the commonwealth of Pennsylvania. At the time of the execution of said note there was, and ever since has been, in force in the commonwealth of Pennsylvania the following statute: "It shall be the duty of the prothonotary of any court of record within this commonwealth on the application of any person being the original holder, or assignee of such holder, of a note, bond or other instrument of writing

in which judgment is confessed, or containing a warrant for an attorney of law or other person, to confess judgment, to enter judgment against the person or persons who executed the same, for the amount which, from the face of the instrument, may appear to be due, without the agency of an attorney, a declaration filed with such stay of execution as may be therein mentioned for the fee of $1, to be paid by the defendant party entering in his docket the date and tenor of the instrument of writing on which the judgment may be filed, which shall have the same force and effect as if the declaration had been filed, and judgment been confessed by an attorney or judgment been obtained in open court, and in term time."

The note referred to was not paid at maturity, and on the 20th day of August, 1872, the holder of the note presented it to a prothonotary of the court of common pleas of Crawford county, in the commonwealth of Pennsylvania, and such prothonotary entered judgment thereon against the makers.   On the 11th day of October, 1876, the judgment so entered had not been satisfied, and on that date it was transferred to the court of common pleas of Venango county in said state, in accordance with the statute then in force, which statute is as follows:   "In addition to the remedies now provided by law, hereafter any judgment in any district court, or court of common pleas of Pennsylvania, may be transferred from the court in which they are entered, to any other district court, or court of common pleas in this commonwealth, by filing of record in said other court a certified copy of the whole record in the case. And any prothonotary receiving such certified copy of record, in any case in which judgment has been entered by another court or in another court by transcript from justices of the peace, shall file the same, and forthwith transcribe the docket entry thereof into his own docket; and the case may then be proceeded in and the judgment and costs collected by executions, bill of discovery, or attach-

ment, as prescribed by the act entitled 'An act relating to executions,' passed the 16th day of June, 1836; and as to lien, revivals, executions, and so forth, it shall have the same force and effect, and no other, as if the judgment had been entered, or the transcript been originally filed in the same court to which it has thus been transferred."

On the 11th of August, 1871, there was in force in the commonwealth of Pennsylvania, and ever since has been, the following statute: "Upon all judgments already entered, or which may be hereafter entered in any court of record within this commonwealth, it shall be lawful to sue out a writ of *scire facias* to revive the same according to the provisions of this act, and the act of which this act is a supplement, or to revive the same by agreement of the parties filed and docketed as aforesaid, notwithstanding the day of the payment of the money for which such judgment may be rendered, or any part thereof, may not have arrived at the time of suing out such writ of *scire facias,* or the revival of such judgment by agreement, as aforesaid, and notwithstanding any other condition or contingency may be attached to such judgment or any execution may have been issued to such judgment; and moreover, no order or rule of court, or any other process or proceeding thereof, shall have the effect of obviating the necessity of the revival, in manner herein prescribed, of any judgment whatever."

On March 7, 1882, in accordance with the provisions of the statute last cited, a writ of *scire facias* was issued by the prothonotary of the court of common pleas of Venango county, Pennsylvania, to revive said judgment and placed in the hands of the sheriff of said county for service. Said *scire facias* writ was returned, indorsed by the sheriff that the defendants could not be found. Thereupon, and in accordance with the statute then in force in said state, proclamation was made by the court crier of said court, calling upon all persons interested to show cause why such judgment

should not be revived. The statute to which reference was last made is as follows: "All such writs of *scire facias* shall be served upon the *terre* tenants, or persons occupying the real estates bound by the judgments; and ,also where he or they can not be found, on the defendant or defendants, his or their *feoffee* or *feoffees,* or on their heirs, executors, or administrators of such defendant or defendants, his or their *feoffee* or *feoffees,* and where the land or estate is not in the immediate occupation of any person, and the defendant or defendants, his or their *feoffee* or *feoffees,* or their heirs, executors, or administrators can not be found, proclamation shall be made in open court, at two succeeding terms, by the crier of the court in which such proceedings may be instituted, calling upon all persons interested to show cause why such judgment should not be revived. And no proof of the due service thereof, or no proclamation having been made in the manner hereinbefore set forth, the court from which the said writ may have issued shall, unless sufficient cause to prevent the same is shown, at or before the second term, subsequent to the issue of the writ, direct and order the revival of any such judgment during another period of five years against the real estate of such defendant or defendants. And proceedings may, in like manner, be had again to revive any such judgment at the end of the said period of five years, and so from period to period as often as the same may be found necessary."

At the time said *scire facias* writ was returned indorsed "Not found" as to the defendants, nor at any time since, has anyone interposed any objection to the revival of said judgment.

May 2, 1883, a second *scire facias* writ was issued for the revival of said judgment, which was also returned "Not found" as to the defendants. Proclamation was again made by the court crier, and no one appeared, nor has since appeared, and interposed any objection to the revival of the judgment. September 10, 1883, judgment was entered and

liquidated in said court of common pleas against the makers of said note in the sum of $1,763. May 31, 1899, James S. McCray, the original payee of said note, died, and the appellants were appointed executors of his estate, and on May 31, 1899, such executors had another *scire facias* writ issued to revive said judgment, and said writ was returned "Not found" as to said defendants, and upon such return the court crier made proclamation in court, as required by statute. On August 1, 1899, an *alias scire facias* writ was issued to revive said judgment, placed in the hands of the sheriff for service, and was also returned "Not found." Proclamation was made in like manner, and no one at that time, or since, interposed any objection to the revival of said judgment. And on April 3, 1900, judgment was entered and liquidated against the defendants in said court of common pleas in the sum of $3,499.53. At the time of the execution of the original note both of the makers were residents of, and domiciled in, the commonwealth of Pennsylvania. It is observable that this proceeding is not based upon the original note, nor the original judgment as entered by the prothonotary, for the principle is well defined that the note was merged into the original judgment, and that that judgment was merged into the succeeding one, and so on until the judgment last entered on April 3, 1900, and that is the basis of this action.

Some technical objections are made to the complaint, but from the view of the law which we have taken, we deem it unnecessary even to refer to such technical objections, and shall determine the rights of the parties upon their merits. It is the theory of appellants, as disclosed by their brief and in oral argument, that the complaint affirmatively shows that the original judgment and all subsequent revivals thereof, were in strict accordance with the laws of the commonwealth of Pennsylvania, and the courts of this state are bound thereby, under that provision of the federal constitution which says: "Full faith and credit shall be given

in each state to the public acts, records, and judicial proceedings of every other state." Const. U. S., Art. 4, §1. On the contrary, counsel for appellee contend that the original judgment is not within that constitutional provision, because it is not a judgment of a court, nor of any judicial officer, but merely the act of a ministerial officer, which does not rise to the dignity of a judgment within the provision of the Constitution. It is also contended that the original note authorized an attorney to appear and confess judgment, and as this was never done, the courts of this State are not required to enforce against a citizen of this State a judgment by virtue of such warrant of attorney, and without any appearance by him or for him. It is also contended that a *scire facias* judgment rendered in the state of Pennsylvania without service of process or appearance can not be enforced in this State, notwithstanding it might, under the laws of that state, be a valid and binding judgment, and enforceable against the judgment defendant.

In the case of *Thormann* v. *Frame,* 176 U. S. 350, 20 Sup. Ct. 446, 44 L. Ed. 500, Chief Justice Fuller said: "It is thoroughly settled that the constitutional provision that full faith and credit shall be given in each state to the judicial proceedings of other states, does not preclude inquiry into the jurisdiction of the court in which the judgment is rendered over the subject-matter, or the parties affected by it, or into the facts necessary to give such jurisdiction."

In the decision of this case, our inquiry need not go farther than to determine whether or not the common pleas court of Venango county, Pennsylvania, by the proceedings under the *scire facias* writ, acquired jurisdiction over the person of the defendant, so as to render a judgment binding on him in this State. It certainly did not acquire jurisdiction over him by virtue of the warrant of attorney expressed in the note, for that power or warrant was exhausted in the rendition of the original judgment. It did

not acquire jurisdiction over him by the issuing and service of any process known to the law, for by the facts exhibited it is expressly shown that this was not done. If jurisdiction was acquired, it was by virtue of the return of the sheriff of two successive *scire facias* writs, showing that the defendant was not found, and by proclamation of the court crier. To conclude that jurisdiction of the person was acquired, we must declare as a legal rule, that two returns of *nihil* to *scire facias* writs under the Pennsylvania statute are equivalent to personal service or appearance by the defendant. This we can not do. The rule is fundamental that jurisdiction of the person is obtained in two ways: (1) By service of process duly issued; and (2) by appearance in court. In this case jurisdiction was not obtained over the person of Dilks either by process duly served or by his voluntary appearance. If the original judgment or the *scire facias* judgment were valid and binding in that state, it was, by virtue of the statute cited, peculiar to that jurisdiction.

In the decision of this case it is necessary for us to determine the validity of these revival judgments within the jurisdiction of the commonwealth of Pennsylvania. The controlling question here is whether such judgment, thus rendered in that state, against a person not a resident of the state where rendered, is valid and binding on a citizen of this State and enforceable by our courts.

The case of *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565, is illustrative of the principle under consideration. That was an action to recover possession of real estate situate in the state of Oregon. The defendants claimed to have acquired the premises under a sheriff's deed, made upon a sale of the property on execution issued upon a judgment recovered against the plaintiff in one of the circuit courts of that state. When the action was commenced and judgment rendered, the defendant was a nonresident of Oregon. He was not personally served with process. He

did not appear to the action, and judgment was rendered against him upon his default in not answering the complaint upon a constructive service of summons by publication. The civil code of Oregon provides for such service when an action is brought against a nonresident and absent defendant and he has property within the state. The question involved was the validity of a money judgment rendered in one state in an action upon a simple contract against a resident of another state, without personal service of process upon him or his appearance therein. In speaking of the validity of the judgment, in the state where rendered, the Supreme Court by Mr. Justice Field said, on page 732: "Be that as it may, the courts of the United States are not required to give effect to judgments of this character when any right is claimed under them. Whilst they are not foreign tribunals in their relations to the state courts, they are tribunals of a different sovereignty, exercising a distinct and independent jurisdiction, and are bound to give to the judgments of the state courts only the same faith and credit which the courts of another state are bound to give them. Since the adoption of the fourteenth amendment to the federal Constitution the validity of such judgments may be directly questioned, and their enforcement in the state resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute a due process of law. * * * To give such proceedings any validity, there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or his voluntary appearance." In that case the court announces the rule in specific terms how jurisdiction is to be obtained as follows: "As stated by Cooley in his treatise

on Constitutional Limitations, 405, for any other purpose than to subject the property of a nonresident to valid claims against him in the state 'due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered."

In the case of *Weaver* v. *Boggs,* 38 Md. 255, it was held that suit could not be maintained in the courts of Maryland upon a judgment of a court of Pennsylvania, rendered upon returns of *nihil* to two successive writs of *scire facias* issued to revive a Pennsylvania judgment, where the defendant at the time of the issuing of the writs was a resident of Maryland, and out of the jurisdiction of the court that rendered the judgment.

In the case of *Grover, etc., Mach. Co.* v. *Radcliffe,* 137 U. S. 287, 11 Sup. Ct. 92, 34 L. Ed. 670, the Supreme Court quoted approvingly from the Maryland case the following: "It is well settled that a judgment obtained in a court of one state can not be enforced in the courts and against a citizen of another, unless the court rendering the judgment has acquired jurisdiction over the defendant by actual service of process upon him, or by his voluntary appearance to the suit and submission to that jurisdiction. Such a judgment may be perfectly valid in the jurisdiction where rendered and enforced there even against the property, effects and credits of a nonresident defendant there situated; but it can not be enforced or made the foundation of an action in another state." The court said, in referring to the case of *Weaver* v. *Boggs, supra,* where the judgment, as here, was entered by a prothonotary: "Upon its face, then, the judgment was invalid, and to be treated as such when offered in evidence in the Maryland court. * * * The courts of Maryland were not bound to hold this judgment as obligatory either on the ground of comity or of duty, thereby permitting the law of another state to override their own."

In *Du Pont* v. *Abel,* 81 Fed. 534, it was said: "A personal judgment is without validity if rendered in a state court in an action upon a money demand against a nonresident upon whom no personal service within the state was made, and who did not appear. Such a judgment may be perfectly valid in the jurisdiction in which it was ren- dered, and enforced even against the property, effects, and credits of the nonresident there situated, but it can not be enforced or made the foundation of an action in another state."

In the case of *Brooks* v. *Dun,* 51 Fed. 138, there is an exhaustive review of the authorities, and it was there held that the authority given by a bond given to an attorney of a court of record to confess judgment did not authorize the prothonotary of the court to do so.

Since the decision of the case of *Pennoyer* v. *Neff, supra,* the question there decided has been before the circuit courts of the United States in various forms, and their decisions have been uniformily adverse to the validity of service in such cases as this without personal service of the defendant in the state where the suit is brought, or his voluntary appearance therein. See *Brooks* v. *Dun, supra,* and authorities there cited.

The case most directly in point, and one which covers every debatable question here involved, is *Owens* v. *Henry,* 161 U. S. 642, 16 Sup. Ct. 693, 40 L. Ed. 837. The facts upon which the case was decided were, in substance, these: A judgment was duly recovered in a Pennsylvania court against Henry, while he was a citizen of that state. Subsequently *scire facias* was issued to revive the judgment, and judgment was rendered for want of appearance on two returns of *nihil* to two successive *scire facias* writs. This was in accordance with the provisions of the Pennsylvania statute above cited. Upon such *scire facias* judgment suit was brought against Henry in the United States circuit court for the district of Louisiana, to which state

he had removed, and where he resided until his death. Chief Justice Fuller, in delivering the opinion of the court, said: "Viewed as a new judgment rendered as in an action of debt, it has no binding force in Louisiana, as Henry had not been served with process or voluntarily appeared. And considered as in continuation of the prior action and a revival of the original judgment for purposes of execution, on two returns of *nihil,* it operated merely to keep in force the local lien, and could not be availed of as removing the statutory bar of the *lex fori* for the same reason."

*Betts* v. *Johnson,* 68 Vt. 549, 35 Atl. 489, was also an action on a *scire facias* judgment rendered in Pennsylvania. It was there held that while full credit is to be given in the courts of Vermont to the judgments of a sister state, whether the court rendering such judgment had jurisdiction is always open to inquiry, and that a personal judgment upon a money demand entered without personal service within the state or a voluntary appearance is invalid. It was also held that a power contained in a note to appear and confess judgment was exhausted by the confession of judgment, and does not extend to subsequent proceedings on such judgment. In the same case it was held that when a judgment was entered in Pennsylvania against a defendant upon a note containing such warrant, and subsequently, without any notice, a second judgment was entered in *scire facias* proceedings for want of an appearance, the second judgment being *quod recuperet* such second judgment was not valid in Vermont. The court there said: "In whatever view we look at the proceedings in Pennsylvania, the plaintiff is entitled to no relief; for if he stands upon the judgment entered in January, 1895, that is invalid as rendered without notice and without appearance."

The supreme court of Pennsylvania, under whose statutes appellants rely to uphold the judgment sued on, repudiates the doctrine, so earnestly contended for here, that

one state must, under the federal Constitution, enforce a judgment rendered in another state, where by the laws of such state, such judgment is enforceable there. In *Steel v. Smith,* 7 Watts & Serg. 447, quoting from the syllabus, that court declared the rule to be that: "The act of congress made to carry out the fourth article and first section of the federal Constitution, which declares that judicial records proved in the manner prescribed shall have such faith and credit given to them in any court within the United States as they have by law and usage in the courts of the state from whence they are or shall be taken, does not preclude inquiry into the jurisdiction of the court or the right of the state to confer it. Held, therefore, that a judgment in foreign attachment affecting to bind not only the property attached, but the persons of defendants, not citizens or within its precincts at the time, is to be treated as a nullity by a court in another state, though it would bind the persons of the defendants in the courts and by the laws of the state in which it was rendered."

It is but fair to say, that in some of the states a contrary rule prevails, but the great weight of authority and the sounder principle are in harmony with the conclusion we have reached.

Judgment affirmed.