WABASH WESTERN RY. v. BROW.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

No. 199.

**1. REMOVAL OF CAUSES—OBJECTION TO JURISDICTION—APPEARANCE.**
    The filing of a petition for removal of a cause from a state to a federal court, without objecting to the jurisdiction of the state court over the defendant's person, constitutes a general appearance; and it is too late, after such removal, to urge, in the federal court, that that court has no jurisdiction over the defendant by virtue of the process issued.
**2. EVIDENCE—NEGLIGENCE—FELLOW SERVANTS.**
    Plaintiff, a car repairer in the employ of defendant railroad company, while at work in defendant's yards, was injured in a collision, caused by the negligent misplacing of a switch by a switchman, also in defend-

ant's employ, who was drunk at the time. *Held*, that evidence that the switchman had been drunk some weeks before, and in that condition had caused a similar accident, was competent. it appearing that the circumstance had been reported to defendant's foreman, who had authority to employ and discharge men; and that the doctrine of fellow servants' negligence had no application.

**3. SAME—RES GESTAE.**

*Held*, further, that evidence that the foreman, upon receiving the complaint, replied: "What of it? If T. [the switchman] should kill three or four Polacks, there is enough of them yet,"—was competent as res gestae, no claim being made against the railroad company for punitive damages.

**4. RELEASE—WANT OF CONSIDERATION.**

Plaintiff had given to defendant a release, under seal, of all claims to damages resulting from his injuries. It appeared that no consideration had ever been given for such release. The statutes of Michigan (How. Ann. St. § 7520), in which state the accident occurred, provide that a seal is only presumptive evidence of consideration. *Held*, that the release should be disregarded.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

In September, 1892, Joseph Brow filed his declaration in the circuit court for Wayne county, Mich., against the Wabash Western Railway, seeking to recover $20,000 damages for a personal injury caused, as he alleged, by defendant's negligence. On the 24th of the same month the sheriff of the county duly served Fred J. Hill, as agent of the defendant, with a copy of the declaration, and a notice to appear and plead in 20 days. On October 7th the defendant filed its petition for removal as follows:

"To the Circuit Court for the County of Wayne, aforesaid: The petitioner. the Wabash Western Railway, defendant in the above-entitled cause, shows to the court as follows: (1) That the matter and amount in dispute in the above-entitled cause exceeds, exclusive of interest and cost, the sum or value of two thousand dollars. (2) That the controversy in said suit is between citizens of different states, and that the petitioner, the defendant in the above-entitled suit, is a corporation created and existing under the laws of the state of Missouri, having its principal business office at the city of St. Louis, in said state, and a citizen of the said state of Missouri, and a resident of said state of Missouri, and that the plaintiff, Joseph Brow, was then, and still is, a citizen of the state of Michigan, and a resident of the county of Wayne, in said state. (3) Your petitioner offers herewith good and sufficient security for the entry by it in the circuit court of the United States for the Eastern district of Michigan on the first day of its next session of a copy of the record in said suit, and for paying all costs that may be awarded by said circuit court if said court shall hold that this suit was wrongfully or improperly removed thereto. Your petitioner therefore prays this court to proceed no further in this suit, except to make the order of removal required by law, and to accept said surety and bond, and to cause the record herein to be removed into said circuit court of the United States for the Eastern district of Michigan."

Defendant also filed his bond, conditioned to enter in the United States district court for the Eastern district of Michigan on the first day of its next session a copy of the record, and to pay all costs if the suit should be found to be wrongfully removed. The order of removal was granted the same day. On October 14th the record was filed in the court below, and afterwards, upon the same day, this motion:

"And now comes the Wabash Western Railway, defendant (appearing specially for the purpose of this motion), and moves the court, upon the files and records of the court in this cause, and upon the affidavit of Fred J. Hill, filed and served with this motion, to set aside the service of the declaration and rule to plead in this cause, and to dismiss the same for want of jurisdiction of the person of the defendant in the state court from which this cause was removed and in this court."

The motion was supported by the following affidavit:

"Fred J. Hill, being duly sworn, deposes and says: (1) That this deponent on the 24th day of September, A. D. 1892, when he was served with a copy of the declaration in this cause, was the freight agent of the Wabash Railroad Company, a corporation which owns and operates a railroad from Detroit to the Michigan state line, and was not an agent of the Wabash Western Railway, defendant in this suit. (2) That on the day aforesaid the defendant in this cause, the Wabash Western Railway, did not own, operate, or control any railroad in the state of Michigan, or have any officers or agent of any description therein, and did no business, and had no property and no place of business, in said state; and that on said day deponent was not a ticket or station agent of the said defendant, nor an officer or agent of the defendant of any description."

No other evidence was offered on the issue raised by the motion. The circuit court denied the motion, and required defendant to plead. To this action the defendant excepted, and went to trial under protest.

Brow, the plaintiff, was injured while repairing a car of defendant in its yards at Delray, near Detroit. He was one of a gang of car repairers in defendant's employ at work on some seven cars under the direction of one Heiler as foreman. The cars were on a track known as the "repair track." Blue flag signals were displayed, to show to the yard men that men were at work on and under them. A switch engine crew was directed to push some other cars which had been repaired on to a track parallel with the repair track. Instead of doing so, they pushed the cut of cars on to the repair track, bumped the cars standing there together, and severely injured plaintiff, who was at work under his car putting in a drawbar, by pinning him down between his tool box and one of the axles. Plaintiff's evidence tended to show that the mistake in the turn of the switch occurred through the negligence of one Thompson, a switchman, who was drunk; that a few weeks before, a similar mistake had been made by the same man, in the same drunken condition; that Heiler, plaintiff's foreman, had at that time reported Thompson's drunken negligence to Henderson, the foreman of the yard, and to Ruxton, the general foreman of the car department in the yard; that Henderson, in the absence of Dimick, the general yard master of defendant, had the authority to employ and discharge switchmen under him. Defendant's evidence tended to show that the accident was caused, not by Thompson, but by the foreman of the switch crew, and that Thompson was a sober man, and that he and plaintiff had worked together in the same yard. Defendant further introduced a release, signed by Brow, as follows:

"Whereas on the 9th day of Nov., 1887, I, Joseph Brow, was an employé of the Wabash Western Railway Company, and as such employé was engaged as carpenter in Delray yard; and whereas, I, the said Joseph Brow, received certain injuries as follows: ribs bruised; and whereas, the said railway company denies any and all negligence on the part of itself, its officers, agents, and employés, and denies any and all liability for damages for the injuries so as aforesaid by me received: Now, therefore, for the purpose of fully ending and determining the question of liability on the part of the said railway company for damages for the aforesaid injuries, and for the purpose of avoiding litigation, I, the said Joseph Brow, for and in consideration of the premises and of the sum of one dollar to me in hand paid, the receipt whereof I do hereby acknowledge, and of re-employment by said railway company for such time only as may be satisfactory to the said railway company, do hereby waive and relinquish all claims which I may have against the railway company for damages for the aforesaid injuries, and do hereby release the said railway company of and from all claims as aforesaid.

"Witness my hand and seal, this 10th day of Nov. A. D. 1887. [Signed] Joseph Brow. [Seal.]"

Ferguson, whom defendant called to prove plaintiff's signature to the release, was the clerk of the master mechanic, Ruxton. Ferguson and Ruxton witnessed the signature. Ruxton said he could not remember whether remuneration or employment was given to the plaintiff, but that defendant never refused to take him back. Ferguson testified that he did not think that any money had been paid to plaintiff, or that he had received any em-

ployment from defendant. In rebuttal, plaintiff stated that he was sent for to go to .the office in the yard; that he there saw Ferguson, who had this release, and two other papers; that Ferguson asked him his wife's name, and those of his children, and then gave him a pen, and said, "Sign this;" that nothing was said to him about employment; and that he received no consideration in employment or money from defendant. Defendant moved that a verdict be directed in its favor. This was overruled.

· The only part of the charge material to the present discussion concerns the release. It was as follows: "I charge you, in regard to the release, inasmuch as that is offered in bar of the plaintiff's claim, there is not, in view of the testimony laid before you, such a consideration proved to have been given for the execution of that paper as makes it competent for you to find it to be a bar to recovery. The testimony is that there was no money paid, and that there is nothing in that paper which obliges the company to employ the plaintiff." The jury returned a verdict for $4,000 for plaintiff. The court made an order granting a new trial, unless plaintiff entered a remittitur of $1,500, which he did. Thereupon judgment was entered for $2,500. The judgment has been brought by writ of error to this court for review.

Several of defendant's exceptions and assignments are based on the circuit court's rulings on matters of evidence. Defendant excepted to the admission of evidence that 19 days before, Thompson, while drunk, had caused a similar accident. Again, the defendant excepted to the refusal of the court to exclude a statement by Heiler that he had reported Thompson's drunkenness and negligent conduct to Henderson, and that Henderson had responded: "What of it? If Thompson would kill three or four Polacks, there is enough of them yet." The other exceptions related to the evidence of Ferguson, Ruxton, Heiler, and plaintiff as to the signing of the release, it being claimed by counsel for defendant that, after proof of the signature, the release under seal was a binding contract, importing consideration, and could not be varied or contradicted and could only be set aside in equity.

Alfred Russell, for plaintiff in error.

William E. Banbie, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge, after stating the case, delivered the opinion of the court.

Can a defendant, who makes no objection to the jurisdiction of the state court over his person, and who files a petition for removal to the federal court, be heard to urge in the latter court that the state court acquired no jurisdiction over him because of defective service? The twelfth section of the judiciary act of 1789, giving the right of removal, was worded as follows:

"That if a suit be commenced in any state court against an alien or by a citizen of the state in which the suit is brought against a citizen of another state and the matter in dispute exceeds the aforesaid sum or value of $500.00 exclusive of costs to be made to appear to the satisfaction of the court; and the defendant shall, at the time of entering his appearance in such state court, file a petition for the removal of the cause for trial into the next circuit court, to be held in the district where the suit is pending, * * * and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of said process against him, and also for his there appearing and entering special bail in the cause, if special bail was originally requisite therein, it shall then be the duty of the state court to accept the surety, and proceed no further in the cause, and any bail that may have been originally taken shall be discharged, and the said copies being entered as aforesaid, in such court of the United States, the cause shall there proceed in the same manner as if it had been brought there by original process."

Under this section it was held by the supreme court of the United States, by Mr. Justice Curtis and by Judges Krekel and Treat of Missouri, that the filing of a petition for removal, and the removal of the cause from the state court to the federal court, constituted a waiver of all objections to jurisdiction over the person. In the case of Pollard v. Dwight, 4 Cranch, 421, Dwight brought a foreign attachment against Pollard & Pickett in a state court of Connecticut. The defendants appeared, and removed the cause to the circuit court of the United States for the district of Connecticut, and there pleaded to the jurisdiction of the court on the ground that there was no personal service on them. This plea was held bad, and the ruling was sustained in the supreme court, where Chief Justice Marshall said:

"The point of jurisdiction made by the plaintiffs in error is considered as free from all doubt. By appearing to the action, the defendants in the court below placed themselves precisely in the situation in which they would have stood had process been served upon them, and consequently waived all objections to the nonservice of process. Were it otherwise, the duty of the circuit court would have been to remand the cause to the state court in which it was instituted, and this court would be bound now to direct that proceeding."

The necessary implication of this language is that no petition for removal was valid in a state court without such an appearance there as to waive all objection to the court's jurisdiction over the person, that a petition for removal without appearance required a remanding of the case.

In Sayles v. Insurance Co., 2 Curt. 212, Fed. Cas. No. 12,421, a foreign corporation sued in a state court of Rhode Island filed a petition in that court to remove the suit to the circuit court of the United States for that district. The defendant then moved to dismiss the action for want of jurisdiction, on the ground that the only service made in the state court had been an attachment of the goods and effects of the defendant, and that the court had no jurisdiction to try a case against the defendant, because it was neither an inhabitant of the district where the suit was brought, nor was it found therein; but Mr. Justice Curtis held that under the twelfth section of the judiciary act it was not necessary that the defendant should be an inhabitant of the district, or should be personally found therein; that under that act any process in accordance with the laws of the state by which the defendant was made a party was sufficient to constitute it a pending suit for removal within the jurisdiction of the federal court. As a second ground, however, for his conclusion he said:

"Besides, it has been held in Toland v. Sprague, 12 Pet. 300, that the locality of the action within the district where the defendant is an inhabitant or is found is a personal privilege of the defendant, which he may waive by appearing and pleading to the action. And I am of opinion that when he appears in the state court, files a petition for leave to remove the action, gives a bond to enter it in the circuit court, and actually enters it there, he has thereby waived any personal privilege he might have had to be sued in another district. If pleading to the action amounts to a waiver of such a privilege, upon the ground that he ought not afterwards to be heard to object to the means by which he was brought into court, I do not perceive why these

proceedings should not have the same effect. The defendant .comes in, becomes the actor treats the suit as one properly instituted, removes it to another court, and enters it there, and then says he was not obliged to appear at all, and the state court in effect had no suit before it. This, I am of opinion, he cannot do. I consider that this court will not look back to inquire into or try the question whether the state court had jurisdiction. The act of congress allows defendants to remove actual and legally pending suits from the state courts. If this were not such a suit, the defendant should not have brought it here. By bringing it here, he voluntarily treats it as properly commenced, and actually pending in the state court; and he cannot, after it has been entered here, treat it otherwise. It is urged that this will prevent citizens of other states from trying in this court the question whether the state court had jurisdiction. Not so. If the state court had no jurisdiction, and the defendant does not appear, its proceedings are all void, and may be shown to be so in an action brought in this court against any one who meddles with the person or property of the defendant under the color of such proceedings. The only objections which the defendant will be precluded from trying here are technical objections, which do not affect the merits; and I see no good reason why he should not be prevented from trying them here."

These remarks have been referred to as obiter dicta, and unnecessary to the decision of the case. This is hardly a proper statement of their effect. Mr. Justice Curtis put his decision on two grounds, either of which sustains his conclusion, and the statement of neither, therefore, was an obiter dictum.

In Bushnell v. Kennedy, 9 Wall. 387, a firm of citizens of Louisiana sued in the state court of Louisiana a citizen of Connecticut on an obligation assigned by the original owner to the plaintiffs. The defendant filed a petition for removal into the circuit court of the United States for the district, and the case, after having reached that court, on motion was remanded to the state court, on the ground that under the eleventh section of the judiciary act the plaintiffs could not maintain a suit in a court of the United States without averring in the petition that their assignors were citizens of another state than that of the plaintiffs. The order remanding the cause was carried on error to the supreme court of the United States. It was held by that court that .the cause was rightly removed, and that the disability imposed upon assignees of a chose in action to sue in the United States court by the eleventh section of the judiciary act did not apply to removed cases. It was claimed in argument that the eleventh section must apply to removed cases, because the twelfth section provided that the cause should, after removal, proceed in the same manner as if it had been heard by original process. The supreme court, speaking by Chief Justice Chase, said:

"But we cannot recognize the validity of the inference that the defendant, before pleading in the circuit court, may move to dismiss the suit for want of jurisdiction. This construction would enable the nonresident defendant in a state court to remove the suit against him into a circuit court, and then, by a simple motion to dismiss, defeat the jurisdiction of both courts. Such a construction, unless imperatively required by the plain language of the act, is wholly inadmissible. And it is clear that the language of the act does not require it. Its plain meaning is that the suit shall proceed, not that it shall proceed unless the defendant moves to dismiss. The defendant is not in court against his consent, but by his own act; and the suit is to proceed as if brought by original process, and the defendant had waived all exception to jurisdiction, and pleaded to the merits. Under the eleventh section, the exception to jurisdiction is the privilege of the defendant, and may be waived,

for the suit is still between citizens of different states, and the jurisdiction still appears in the record. The first act of the defendant, indeed, under the twelfth section, is something more than consent, something more than a waiver of objection to jurisdiction; it is a prayer for the privilege of resorting to federal jurisdiction; and he cannot be permitted afterwards to question it;" citing Sayles v. Insurance Co., 2 Curt. 212, Fed. Cas. No. 12,421.

In the case of Sweeney v. Coffin, 1 Dill. 73, Fed. Cas. No. 13,686, Judges Treat and Krekel, in considering a motion to remand a cause to the state court on the ground that the petition for removal or the affidavit in support of it was insufficient, found it necessary to discuss the question whether the filing by the defendant of a petition for removal was an entering of his appearance in the state court. Judge Treat said:

"Although no express decision in a United States court has been found, and although state courts differ largely as to what makes an appearance in causes before them, and whether appearances by attorneys are conclusive or prima facie merely, yet there are general reasons governing the removal of causes from state to United States courts, which enable this court to reach a satisfactory conclusion on the point presented. When the jurisdiction of a United States court is dependent on the citizenship of the parties under the constitution and acts of congress, if the suit be originally brought in the United States court, personal service is necessary, unless there is a voluntary appearance. Toland v. Sprague, 12 Pet. 300. If this suit had been brought originally in this court against the defendant, service or appearance would have been necessary for further proceedings. Although, in state courts, constructive service is sufficient, it is not so in a United States court; and hence the necessity of a voluntary appearance or of actual service. But, as appearance by attorney was and is admissible in this class of actions, where no capias or bail is required, this court holds that the filing of the petition for removal is the entry of an appearance within the meaning of the statute. Indirectly, the reasons for such a rule were given by the supreme court, not only in Toland v. Sprague, supra, but also in several other cases. By constructive service in the state court it could have proceeded to judgment, but to prevent such action defendant availed himself of his right for removal, and is precluded from denying the status he has assumed."

The twelfth section of the act of 1789 remained unamended until the act of March 3, 1875 (18 Stat. 470). Section 3 of that act provided that whenever any person entitled to remove—

"Any suit mentioned in the next preceding section shall desire to remove such suit from a state court to the circuit court of the United States, he * * * may make and file a petition in such suit in such state court before or at the term at which said cause could be first tried and before the trial thereof for the removal of such suit into the circuit court to be held in the district where such suit is pending, and shall make and file therewith a bond, with good and sufficient surety, for his or their entering in such circuit court, on the first day of its then next session, a copy of the record in such suit, and for paying all costs that may be awarded by the said circuit court, if said court shall hold that such suit was wrongfully or improperly removed thereto, and also for their appearing and entering special bail in such suit, if special bail was originally requisite therein, it shall then be the duty of the state court to accept said petition and bond, and proceed no further in such suit, and any bail that may have been originally taken shall be discharged; and the said copy being entered as aforesaid in said circuit court of the United States, the cause shall then proceed in the same manner as if it had been originally commenced in the said circuit court."

Section 6 provides:

"That the circuit court of the United States shall, in all suits removed under the provisions of this act, proceed therein as if the suit had been originally commenced in said circuit court, and the same proceedings had been

taken in such suit in said circuit court as shall have been had therein in said state court prior to its removal."

The act of 1888, amending the act of 1875, did not affect section 6, above quoted, and made no change with reference to the mode of removal, except that it required the removal to be "at the time or any time before the defendant is required by the laws of the state or the rule of the state court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff."

Under the statutes of 1875 and 1887 and 1888 there have been conflicting decisions as to the right of a defendant after removal to object to the sufficiency of the service upon him. Reference to them will be made hereafter.

It will be observed that in the act of 1789 the time for removal was fixed as that time at which the defendant appeared to plead, and hence it has been suggested that, while a petition for removal under the act of 1789 might constitute a general appearance, the change of time under the act of 1875 and that of 1887 and 1888 would change the effect of the filing of a petition to remove as an appearance. We do not think that the difference in this language is significant of such intention on the part of congress. The decisions in which it was held under the act of 1789 that a petition for removal was in fact a general appearance did not rest upon these particular words of the statute, but rather upon the general character of the act of removal. When a person made a party on the record appears in the case, and asks a court to do anything, this is, and must be, an appearance. If the party is not in court, it is difficult to see how he can invoke the action of the court. But courts have recognized that, while a judgment against a party over whom it has not acquired jurisdiction is void, yet the spreading of it upon the court's record may involve such party in difficulties, and put him to the necessity of afterwards appealing to the court to set it aside, and they therefore have secured him the right to appear specially, without subjecting himself generally to the jurisdiction, to prevent even the semblance of the judgment against him. In extending this privilege, however, courts have been particular to insist that a party who wishes to make such special appearance shall by express limitation show that he does not wish his appearance to be general.

In Briggs v. Humphrey, 1 Allen, 371, Mr. Justice Hoar, speaking for the supreme judicial court of Massachusetts, in a case where the court was considering the question whether a defendant had waived his right to object to the jurisdiction of the court over his person by reason of a defect in the process issued, said:

"Now, it is well settled that a mere defect of service may be waived by a defendant, and is held to be waived if he enters a general appearance in the cause, or appears for any other purpose than to object to the sufficiency of the service."

In Bank of the Valley v. Bank of Berkeley, 3 W. Va. 386–391, the court said:

"The object of the service of process is to bring the party into court. A judgment by default without service would not be legal. By appearance to the action for any other purpose than to take advantage of the defective

execution or the nonexecution of process, a defendant places himself precisely in the situation in which he would be if process were executed upon him, and he thereby waives all objection to the defective execution or the nonexecution of service upon him. I think, therefore, the defendant in this case, by its motions to continue, waived all errors existing in the execution of the process."

See, also, Porter v. Railway Co., 1 Neb. 15; Clark v. Blackwell, 4 G. Greene, 441; Ulmer v. Hiatt, Id. 439; Shaffer v. Trimble, 2 G. Greene, 464; Curtis v. Jackson, 23 Minn. 268; Sargent v. Flaid, 90 Ind. 501; Bury v. Conklin, 23 Kan. 460; Orear v. Clough, 52 Mo. 55; Stanton v. Haverhill Bridge Co., 47 Vt. 172; Flake v. Carson, 33 Ill. 518.

There are two kinds of objections to the jurisdiction of a court; the one is to its jurisdiction of the subject-matter, the other to its jurisdiction of the person. The second may be waived, the first cannot be. It is with reference to the second class of objections, namely, to the jurisdiction over the person, that there is any necessity for care on the part of the defendant in especially limiting the character of his appearance. If the court has no jurisdiction of the subject-matter, consent cannot give it. Hence it has been held that, if a defendant pleads to the jurisdiction of the court over the subject-matter, without making any objection to its jurisdiction over his person, he concedes the jurisdiction of his person if the jurisdiction of the subject-matter is sustained, and, after such plea is overruled, it is then too late for the defendant to avail himself of any objection to the jurisdiction over his person. Said Judge McIlvaine in Smith v. Hoover, 39 Ohio St. 249: .

"The appearance of a defendant in court for the sole purpose of objecting, by motion, to the mode or manner in which it is claimed that jurisdiction over his person has been acquired, is not an appearance in the cause, or a waiver of any defect in the manner of acquiring such jurisdiction; while, on the other hand, the appearance for the purpose of contesting the merits of the cause, whether by motion or formal pleading, is a waiver of all objections to the jurisdiction of the court over the person of defendant, whether the defendant intended such waiver or not. In respect to this question, an important distinction is made between an objection to the jurisdiction of the subject-matter of the suit and of the person of defendant, although complete jurisdiction in the court to hear and determine the action is not acquired unless the court has jurisdiction over both the subject-matter and the person. An objection to jurisdiction over the subject-matter is a waiver of objection to the jurisdiction of the person, while an objection to the jurisdiction of the person is a waiver of nothing."

In Handy v. Insurance Co., 37 Ohio St. 366, where a foreign insurance company made defendant filed a motion to dismiss the action for the reason that the court had no jurisdiction of the case because it appeared from the petition on file that the defendant was a foreign insurance company, and that no part of the alleged cause of action arose in the state, it was held "that the filing of such motion was a voluntary appearance in the action, and the waiver of any defect in the service of summons."

The rule, in other words, is this: that where a defendant comes into court for any purpose, if he intends to object to the court's jurisdiction of his person, he must first make that objection, and limit his appearance accordingly. If he appears for any other pur-

pose, without making this objection, he has waived it. Now, it is true that the filing of a petition for removal is in a certain sense a proceeding directed to the jurisdiction of the court. It is not strictly an objection to the jurisdiction of the court over the subject-matter, because, if the state court has no jurisdiction over the subject-matter, the federal court, by removal, can obtain none. Such a petition prima facie assumes the jurisdiction of the state court, and the existence of a real controversy, and merely asks a change of venue to another forum on grounds dependent on the constitution and the laws of the United States. If the petition for removal can be likened to an objection to the jurisdiction at all, however, it is analogous, not to an objection to the jurisdiction of the person, but to that of the subject-matter. It therefore follows that an appearance to file a petition for removal, not limited in any way, waives all objections to jurisdiction over the person.

It is not necessary for us to discuss whether, under the act of 1789, it was possible in any way to limit the effect of the appearance by a petition for removal, because we are convinced that the sixth section of the act of 1875, quoted above, permits it. That section directs the federal court to proceed as if the same proceeding had been taken before it as had been taken in the state court prior to its removal. This certainly requires that any motion undisposed of at the time of the removal should stand for hearing before the circuit court as it would have stood before the state court if no removal had taken place. Therefore, if a defendant appears specially in the state court to move a dismissal for want of proper service, and then files his petition for removal, the motion must come on regularly for hearing in the federal court. He does not waive by his petition his right to insist on his motion, because, conceding the analogy between a petition for removal and an objection to the jurisdiction over the subject-matter, there is no authority which holds that an objection to the service by special appearance may not be united with an objection to jurisdiction over the subject-matter without a waiver of the first objection. While this construction of section 6 of the act of 1875 is not necessary to the decision of the present case, it is essential in considering the authorities upon the subject, which are in great conflict.

In the following cases it has been held that a petition for removal was not a general appearance, and that the plea to the jurisdiction of the person would be entertained in the United States court after it was filed, though no special appearance was entered in the state court for the purpose: Atchison v. Morris, 11 Fed. 585; Small v. Montgomery, 17 Fed. 865; Perkins v. Hendryx, 40 Fed. 657; Clews v. Iron Co., 44 Fed. 31; Bentlif v. Finance Co., Id. 667; O'Donnell v. Railroad Co., 49 Fed. 689; Ahlhauser v. Butler, 50 Fed. 706.

In the following cases, where there was a special appearance to plead to the jurisdiction over the person, followed by a petition for removal, it was held that the plea to the jurisdiction could be entertained in the federal court: Parrott v. Insurance Co., 5 Fed. 391; Blair v. Turtle, Id. 394–398; Elgin Canning Co. v. Atchison, T. & S. F. R. Co., 24 Fed. 866; Kauffman v. Kennedy, 25 Fed. 785; Miner

v. Markham, 28 Fed. 387; Golden v. Morning News, 42 Fed. 112; Reifsnider v. Publishing Co., 45 Fed. 433; Forrest v. Railroad Co., 47 Fed. 1; Richmond v. Brookings, 48 Fed. 241; Brooks v. Dun, 51 Fed. 140; Morris v. Graham, Id. 53; McGillen v. Claflin, 52 Fed. 657. The last case contains quite an elaborate and satisfactory discussion of the question by Judge Ricks.

In the following cases it has been held that a petition for removal in the absence of a special appearance to plead to the jurisdiction in the state court was a general appearance, which waived all subsequent objection on that account: Edwards v. Insurance Co., 20 Fed. 452; Tallman v. Railroad Co., 45 Fed. 156; Hinds v. Keith, 6 C. C. A. 231, 57 Fed. 10,—a decision by the circuit court of appeals of the Fifth circuit; Construction Co. v. Simon, 53 Fed. 6; Caskey v. Chenoweth, 10 C. C. A. 605, 62 Fed. 712.

Construction Co. v. Simon is a vigorous decision by Mr. Justice Jackson, taking the same view of the act of 1875 and 1887 which was taken by Mr. Justice Curtis of the act of 1789.

In Schwab v. Mabley, 47 Mich. 512, 11 N. W. 294, the supreme court of Michigan held that the filing of a petition in a state court for removal to a federal court was not a general appearance in the state court, if the petition was denied, though the court concedes that, if the case had been actually removed to the federal court, the effect would have been to enter the general appearance there. The reasoning of the court is not entirely to be reconciled with the view we have above taken, though its conclusion is not different. Moreover, what the nature of a petition for removal is, and whether it is a waiver of the right of defendant to object to the jurisdiction of the federal court over the person, are really questions of federal practice, and must be determined by us as such, and without regard to the practice in the particular state in which the removal is effected. We should not feel bound, therefore, to accept without question the view of the supreme court of Michigan as to the effect of the petition for removal on the jurisdiction of the federal court.

The result of what has been said is that in the case before us the appearance of the defendant company to file its petition for removal effected a general appearance, and it was too late, after such removal had been perfected for it in the circuit court below, to attempt to plead that that court had not personal jurisdiction over the company by virtue of the process issued.

Coming now to examine the assignments of error, we think the evidence that Thompson had been intoxicated, and, as a result of that intoxication, had negligently caused a similar accident some weeks before, was entirely competent in view of the fact that his conduct had been reported by Heiler to Henderson, who had the power of employment and discharge, and in that, of course, represented the company. It is the master's duty to use due care to employ only competent, careful, and skillful workmen, and any person to whom he delegates this duty is his representative, and for his negligence the master is responsible, and cannot escape liability by pleading the fellow-servant doctrine. It has no application to such a case. Railway Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932.

Henderson' reply to Heiler's complaint concerning Thompson: "What of it? If Thompson should kill three or four Polacks there is enough of them yet,"—was competent as res gestae. Henderson was the representative of the company in the employment and discharge of men, and his reply was in the course of his duty. It is true that, if spoken in earnest, it indicated a wanton recklessness on his part with reference to the discharge of his duty which the company might not be responsible for; but no claim was made for exemplary or punitive damages, and no charge asked by the defendant to prevent the jury from returning them. Because the manner in which a servant discharges the duty of his master has elements of malice in it for which the master cannot be mulcted in punitive damages, we cannot hold that the circumstances tending to show whether the duty was discharged or not are incompetent evidence. The danger of unjustly increasing the damages against the company, because those circumstances may also show malice on the part of the employé, must be avoided by proper instructions from the court.

With reference to the release, we are very clear that the court was right in charging the jury to disregard it. All the evidence in the case showed that no money was paid, and no employment tendered or received, to fulfill the recited consideration of the release. In the absence of any consideration, the release could not, of course, constitute a bar to the action. It is true that a seal imports consideration, but by section 7520 of Howell's Annotated Statutes of Michigan it is only presumptive evidence, and may be rebutted. Green v. Langdon, 28 Mich. 221–225. As the evidence here conclusively established that there was no consideration, the seal had no effect.

The instructions asked by the defendant were each of them, in effect, that the jury should be instructed to bring in a verdict for the defendant. They were rightly refused. There was evidence to show that the accident occurred through the negligence of Thompson, the brakeman. There was evidence tending to show that in his conduct some three weeks before he had shown a drunken recklessness, resulting in a similar accident, and that this was reported to the officer of the company whose duty it was to employ and discharge persons in the position of Thompson. It was for the jury to say whether the information thus conveyed should have led a careful, prudent employer of men to discharge him. We certainly cannot say that there was not evidence sufficient to justify a submission of this issue to the jury.

This covers all the assignments of error that we deem at all material, and leads to an affirmance of the judgment, with costs.