BALTIMORE & O. R. CO. v. HENTHORNE.

(Circuit Court of Appeals, Sixth Circuit.    April 14, 1896.)

No. 376.

1. MASTER AND SERVANT—DUTY TO EMPLOY COMPETENT SERVANTS—NOTICE—
    EVIDENCE.
       In an action against a railroad company for damages for personal in-
    juries sustained by an employé of the company in an accident which some
    of the evidence tends to show was caused by the drunken condition of the
    engineer of the train, it is entirely competent to prove the engineer's
    general reputation for drunkenness and consequent incompetency, for the
    purpose of showing that the railroad company was negligent in retaining
    him in its employ.

2. SAME—PERSONAL OBLIGATION OF MASTER.
       The duty of a master to exercise due care in selecting and retaining
    his employés, proportioned to the consequences that may result from neg-
    ligence of such employés, is one of the personal obligations of the master
    to the servant of which he cannot rid himself by delegating it to an
    agent, and such obligation is not fully discharged by inquiring into an
    applicant's fitness at the time of employing him, but it requires the mas-
    ter to exercise a proper supervision over the employés' work, and thereby
    to keep himself advised of their continued fitness.

3. SAME—NOTICE OF INCOMPETENCY.
       It is sufficient, to charge a railway company with knowledge of the in-
    competency of an employé, that notice of such incompetency should be
    given to those officers of the company who supervise such employé's
    work, and are given authority to suspend him temporarily from his posi-
    tion, for incompetency of the kind in question, and it cannot be required
    that notice of such incompetency should be brought home to those supe-
    rior officers of the company who alone are entitled finally to discharge
    the employé.

4. DAMAGES—MEASURE—LOSS OF EARNING CAPACITY.
       The proper measure of damages for loss of earning capacity of one who
    has been injured by another's wrongful act is the sum required to pur-
    chase for such person an annuity equal to the difference between his prob-
    able yearly earnings during his entire life in his actual condition and
    as he would have been had he not suffered the injury.

Error to the Circuit Court of the United States for the Eastern
Division of the Northern District of Ohio.

This writ of error is brought to review a judgment for the plaintiff in the
circuit court of the United States of the Northern district of Ohio in an ac-
tion brought by Charles Henthorne against the Baltimore & Ohio Railroad
Company, for damages for a personal injury. Charles Henthorne was a
brakeman in the employ of the defendant company on a freight train running
from Chicago Junction, in the state of Ohio, to Garrett, in the state of Indiana,
being the east half of what is known as the "Chicago Division" of the Bal-
timore & Ohio Railroad Company. Henthorne was the head brakeman;
that is, his place of duty was in the forward part of the train, and upon the
engine. His train was the second section of No. 23, west bound. The con-
ductor and engineer of this train had received orders that they were to pass
the second section of the east-bound train, No. 28, at the switch at the sta-
tion of Inverness. The east-bound train had the right of way as between
it and plaintiff's train, and this required that plaintiff's train should enter
the switch to the east of Inverness, and wait the coming upon the main
track of No. 28. The engineer of No. 23 forgot his orders, and did not stop
at the switch at Inverness, but ran on a mile or more beyond the switch,
and brought his train into collision with east-bound No. 28. The plaintiff
was on the engine at the time of the collision, and was so pinned in that be-
fore he could be extricated, both of his legs had to be amputated, and he

suffered other severe and painful injuries from the crushing of his arm and from burns by escaping fire and steam. The plaintiff's petition charged that the accident was due to the intoxication of John Harrison, the engineer of the train upon which the plaintiff was, and that the defendant knew that Harrison was incompetent as an engineer by reason of his habits of intoxication, and was grossly negligent in retaining him in its employ in such a responsible position. The petition further averred that the plaintiff, because it was his first trip as brakeman in defendant's employ, had no knowledge of the incompetency of the engineer, or of his habit of becoming intoxicated, or that he was intoxicated on the day of the collision. The plaintiff introduced the evidence of the conductor of train No. 23, of Harrison's boarding house keeper, and of others, to show that Harrison, the engineer, was drunk and in a drowsy condition during the trip west from Chicago Junction to the place of the collision. Plaintiff introduced further evidence to show that Harrison was in the habit of drinking to excess, and was habitually intoxicated. Plaintiff introduced further evidence to show that Harrison had a general reputation, both at the town of Garrett and the town of Chicago Junction, the terminal stations of his run, as well as among the railroad men along the line of the division, of being addicted to the excessive use of intoxicating liquor. The plaintiff introduced the depositions of a former superintendent, one Britton, and a former master mechanic, one Lowther, both of whom had left the company before the collision, who stated that Harrison had been discharged from the employ of the company while they were connected with it for negligence and drunkenness. The plaintiff also introduced a witness who had been in the employ of the defendant company, who testified that when, as conductor of a train, with Harrison as his engineer, he was about to leave Chicago Junction, Fitzgerald, the yardmaster of the defendant company at the Chicago Junction, cautioned him concerning Harrison's intoxicated condition, and directed him to keep watch to prevent accidents. As yardmaster, Fitzgerald had the right, and it was his duty, upon discovering the intoxication of the engineer, to side-track and hold the train, and notify the superintendent of the condition of affairs.

The defendant introduced evidence to show that Harrison had never been discharged for drunkenness; that he had been suspended twice or three times,—once for running by a target with the red light signal out, once for carelessly mashing the end of a car by reckless backing of his engine, and once for some other minor offense. The defendant did not produce in court, however, the record it had kept of Harrison's service, as it might have done. Defendant also introduced evidence to show that the only persons with authority to dismiss an engineer were the superintendent of motive power, whose office was at Newark, Ohio, and the division superintendent, whose office was at Garrett, Ind.; that the master mechanic had power to suspend an engineer pending a court of inquiry, but not to dismiss him. Defendant introduced much evidence to show that Harrison's reputation was that of a sober, careful, competent engineer, and that he was not a drinking man. The case went to the jury, and resulted in a verdict of $30,000 for the plaintiff. The trial judge made it a condition of overruling the motion for a new trial that a remittitur should be entered of $15,000. This was done, and judgment was entered for the plaintiff for the remaining $15,000.

The defendant requested the court to charge the jury as follows: "J. P. Fitzgerald, the defendant's agent at Chicago Junction, was a fellow servant with the plaintiff, and for his negligence, if he was guilty of any, the defendant is not liable to the plaintiff: and the knowledge of said Fitzgerald that said John Harrison was not competent to run the engine of said train, if he had such knowledge, was not the knowledge of the defendant,"—which charge the court refused to give, and the defendant excepted. The court also refused, over defendant's exception, to give this charge: "Thomas Taylor, the master mechanic at Chicago Junction, was a fellow servant with the plaintiff, and for his negligence, if guilty of any, the defendant is not liable to the plaintiff: and the knowledge of said Taylor of the unfitness of said John Harrison to run the engine of said train, if he had such knowledge, was not the knowledge of the defendant." The defendant requested the court to give this charge to the jury: "The evidence introduced on this trial with reference to the general character of John Harrison, the engineer, as to

his habit of drunkenness or intoxication, cannot be considered by the jury as tending to prove that he was in fact a drunkard, or a person in the habit of becoming intoxicated,"—which charge the court gave as requested, adding at the same time the following language: "That I can make a little more plain. The plaintiff did not attempt to prove that Harrison was drunk at this particular time by offering evidence as to his general bad reputation. That was offered solely for the purpose of showing that it was so notoriously bad that it ought to have come to the knowledge of the defendant. They do not rely upon that to prove the intoxication at the time of the accident. There was other testimony directly upon that point. Therefore I give you this last instruction. Juror: If your honor, please, we do not understand the last instruction. Court: You could not look to the general bad reputation as establishing drunkenness at this particular time. It was not offered by the plaintiff for that purpose. They claim it for the purpose of showing that his reputation was so generally bad that it ought to have come to the knowledge of the defendant, and that, therefore, they were responsible for his bad conduct." To which explanation and comments of the court upon said request, after giving the same, the defendant, by its counsel, at the time excepted.

The court charged the jury, among other things, as follows: "The plaintiff, on his behalf, has offered proof tending to show that the bad habits of Harrison, the engineer, were known to the officers of the defendant authorized to employ and suspend engineers. If you find that such knowledge of bad habits was so brought to the defendant's knowledge through such officers, then the defendant was guilty of negligence, and had a share in causing the injury, and is liable even though the negligence of a fellow servant was contributory also. You will then first consider and weigh the evidence on this point. Corporations can act only through their officers. Knowledge to the company of the bad habits of its engineers must reach it through its officers, and it must be through such officers as are charged with the employment and retention in service of such engineers. There must necessarily be a division of labor and responsibility in such immense corporations, and each department has its appropriate head, who is held responsible for his division of labor or business. In this case the officer who has the supervision of engineers—their employment or suspension, and who is charged with looking after the manner in which they discharge their duties—is the eye and ear of the corporation through which knowledge must go to it of the incompetency of Harrison. It will not be sufficient to trace such knowledge to some officer of some other department. The information and notice must be traced to this particular source." To this charge the defendant excepted.

The court charged the jury also as follows: "Now, there has been evidence on behalf of the plaintiff offered tending to show that such officer had such knowledge. The officers who were in the employ of the defendant about the time of the accident, and some of them who had charge of Harrison's branch of the service, have been examined on behalf of the defendant, and each denied that he knew of Harrison's alleged habits of drunkenness, or that such reputation had ever come to his attention. If you find this to be true, then the defendant is not liable, unless you find that Harrison's reputation as a drinking man was so notorious and widespread, and of such long standing, that the defendant, by reasonable diligence, could have ascertained such incompetency. If his reputation along the line of defendant's road was so notoriously bad as being a careless or negligent employé, and knowledge of such bad reputation could have been ascertained by reasonable diligence, the jury is at liberty to infer from that fact that the defendant, through that means, should have obtained notice of his carelessness; and if the accident which caused the injury was the result of Harrison's recklessness and incompetency, because of his bad habits, then the defendant was guilty of the negligence charged, and would be liable for plaintiff's injury, provided he did not contribute to such accident by his own negligence, as I shall hereafter instruct you."

Again, the court charged the jury as follows: "It is not enough, therefore, to show a bad general reputation, unless it is known and talked about by those around and about those to whose knowledge it is necessary to bring such facts. Apply these rules to this case, and see if the common rumor

referred to by the witnesses as to Harrison's habits was circulated among those who would likely and naturally bring it to the attention of the proper officers of the company. Did his brother engineers who saw him on duty and off duty know of it and hear of it? Did the train master and master mechanic and local agent or other officers having supervision of him know of it and talk about it? If they did not, consider and find out whether the rumors and facts testified to by plaintiff's witnesses would reach defendant's officers. And in this connection it is proper to say that if you find from the evidence that Harrison had been previously discharged, or suspended one or more times, that fact would put defendant upon its inquiry, and you would be justified in sooner inferring from his general bad reputation (if such is established) that notice of his bad habits had reached defendant." To this charge the defendant excepted.

The court, on the question of damages, charged the jury as follows: "The plaintiff has testified that he was earning about sixty dollars per month averaging the year through, so that you may accept that as his earning capacity, in the absence of other evidence. Consider the probable length of his life, the probable periods when he might not earn so much, and the chances of promotion, when he might earn more. All these are proper suggestions to enable you to determine what his probable future earning capacity may be. This is to be measured also by the extent of the disabilities. With this data and these suggestions you should fix his damages at a sum which would, when prudently invested and applied, furnish him what would be his probable earnings for the laboring years of his life, and in this way compensate him for his diminished earning capacity." To this charge the defendant excepted.

The court also stated to the jury they should allow a proper sum for the pain or injury, and what would probably be suffered in the future.

On the question of the plaintiff's contributory negligence, the court charged the jury as follows: "Did the plaintiff know of Harrison's drunkenness at the time of the accident? He swears that he did not; that it was his first trip; that he had not known Harrison before, and states his reasons for not suspecting he was drunk. Consider this in connection with his own witnesses' narrative of Harrison's conduct all through the trip, of plaintiff's statement of the engineer's inability to read his order, and from it all determine whether he knew, or ought to have known by exercising ordinary care, that the man was too drunk to drive his engine. If you find that he did know it, or should have known it, he contributed to his own injury by his negligence, and cannot recover. He was not obliged to continue on the train and imperil his life by the recklessness of a drunken engineer. There were stations where he could have reported the fact to the defendant through the depot operator, and have refused to proceed further."

J. H. Collins, for plaintiff in error.
Skiles & Skiles, on brief for defendant in error (no argument).

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts as above). We find no error in this record, and affirm the judgment. Defendant has stated 24 general assignments of error, which include many minor specifications, but we do not find it necessary to consider them in detail. The assignments of material points can be grouped under a few heads. The defendant complains of the action of the court below in permitting evidence of the general reputation of Harrison for drunkenness and consequent incompetency as an engineer. It should be premised that this was accompanied by evidence that Harrison's drunken condition was the cause of the accident, and by further evidence that Harrison was in the habit of getting drunk. It was entirely competent to show Harrison's general reputation for

the purpose of showing that the defendant was negligent in retaining him in its employ. In Railway Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, the court held:

"The same degree of care which a railroad company should take in providing and maintaining its machinery must be observed in selecting and retaining its employés, including telegraphic operators. Ordinary care on its part implies, as between it and its employés, not simply the degree of diligence which is customary among those intrusted with the management of railroad property, but such as, having respect to the exigencies of the particular service, ought reasonably to be observed. It is such care as, in view of the consequences that may result from negligence on the part of employés, is fairly commensurate with the perils or dangers likely to be encountered."

This is one of the personal obligations of the master to the servant which he cannot rid himself of by delegating it to an agent to perform. Railway Co. v. Brow, 13 C. C. A. 222, 31 U. S. App. 192, and 65 Fed. 941; Railway Co. v. Daniels, 152 U. S. 684, 689, 14 Sup. Ct. 756; Railroad Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590; Hough v. Railway Co., 100 U. S. 213, 218; Fuller v. Jewett, 80 N. Y. 46. Nor does he fully discharge all of the obligation to his servants by fully inquiring concerning the applicant's fitness at the time he takes him into the service. It is the master's duty to exercise proper supervision over the work of his servants, and through such supervision to keep himself advised as to the continued fitness of those in his employ. It was therefore entirely proper to show that the company, through its proper agents, did know, or ought to have known from a due supervision of its employés, that Harrison was an unfit man for engineer, by showing that he had the general reputation of an habitual and excessive drinker of intoxicating liquors. This conclusion is so fortified by authority that we content ourselves with citing the leading cases on the subject: Davis v. Railway Co., 20 Mich. 105; Hilts v. Railway Co., 55 Mich. 437, 21 N. W. 878; Gilman v. Corporation, 10 Allen, 233; Gilman v. Railway Co., 13 Allen, 433; Railroad Co. v. Sullivan, 63 Ill. 293; Stone Co. v. Whalen, 151 Ill. 472, 38 N. E. 241; Driscoll v. City of Fall River, 163 Mass. 105, 39 N. E. 1003; Railway Co. v. Hoover, 79 Md. 253, 29 Atl. 994; Bailey, Mast. Liab. p. 55, and cases there cited. See, also, decision of this court in Railroad Co. v. Camp, 31 U. S. App. 213, 13 C. C. A. 233, and 65 Fed. 952.

Counsel complains of the failure of the court to give the charge, as requested, that evidence as to the reputation of John Harrison in respect of his habit of drunkenness could not be considered by the jury as tending to prove that he was in fact a drunkard. The court did give this charge, but attempted to make it a little more plain by applying it to the issue as to whether Harrison was drunk at the time of the accident, and stated to the jury that such evidence of general reputation did not tend to show that he was drunk at that time. Counsel for the railway insists that he requested the charge, not for the purpose of avoiding the use of evidence of reputation to show that Harrison was drunk at the time of the accident, but to avoid its use to show that he was in fact a drunkard. If counsel had

wished a further elaboration of the charge, he should have asked it from the court. The court gave one illustration, but did not attempt to limit the application of the charge requested to that. We do not think there was any error in this.

Objection is made by counsel for the company also, that the plaintiff's contributory negligence was made out so clearly that the case should have been taken from the jury. This objection cannot be sustained. The defendant swore that he did not know of Harrison's drunkenness, and the circumstances were such as to make this possible, and an issuable fact for the consideration of the jury. The court charged the jury that if he did know of Harrison's drunkenness, he could not recover. We do not wish to be understood as affirming that it would necessarily have been contributory negligence on the part of a new brakeman, which would bar him from recovery in this case, not to leave the engine when he found the engineer drunk. All that we hold is that the charge of the court upon this point and to this effect was not error prejudicial to the defendant below.

The court instructed the jury that it was necessary for the plaintiff to show that the incompetency of Harrison, the engineer, was known, or ought to have been known, to those officers of the company who were given authority to employ, discharge, or suspend him in order to charge the company with the same knowledge; and one of the chief grounds of complaint of counsel for the company is the ruling of the court that the power to suspend an employé for incompetency vested an agent of the company with authority to receive notice of such incompetency. The contention of counsel is in this case that knowledge must have been brought home either to P. C. Sneed, the division superintendent, or to W. H. Harrison, the superintendent of motive power. W. H. Harrison's office was in Newark, Ohio, several hundred miles distant from that part of the railroad upon which Harrison, the engineer, whose competency is here in question, was engaged: while Sneed's duties carried him from Chicago to Chicago Junction. It would be exceedingly difficult to bring home in any way the knowledge of an engineer's incompetency to these two officers under the circumstances. For the safety of the road the company was obliged to intrust to many other agents than those mentioned the power to suspend incompetent servants in order that the company's property, and the persons whose lives were in its custody, should not be exposed to extraordinary dangers. Clearly, the men whose duty to the company it was to exercise this power were those through whom the company sought its knowledge of the manner in which its servants were discharging their duties. They were agents for the very purpose of discovering habitual negligence, and of preventing danger from its presence, when discovered, by immediate suspension. We entirely concur with the court below in holding that an officer entitled to suspend a servant of the company temporarily is an officer who has authority to receive notice for the company of the incompetency of the person to be suspended. If, as was testified to, Fitzgerald, the yard

master, had power to suspend the engineer from a further discharge of his duties when he found that he was intoxicated, if the master mechanic had the power to suspend an engineer pending inquiry for any dereliction of duty, if the train master had the same power, then all these officers were persons whose knowledge of the incompetency of employés under their supervision was the knowledge of the company, and the failure on their part to use due diligence in observing the competency and sobriety of those whom it was their duty to suspend for incompetency or inebriety was the negligence of the company. This obligation of a railway company to use due diligence in the selection and retention of its employés is one which, in view of the assumption of risk by the employés of any casual negligence of their fellow servants, it is most important to maintain, and it should not be frittered away by limiting those whose knowledge shall be the knowledge of the company to one or two officers so far removed from possible knowledge as to make it a hopeless task to bring the incompetency of subordinate servants to their notice. The conclusion thus reached is not in harmony with the decision of the court of appeals of Maryland in Railroad Co. v. Hoover, 79 Md. 253, 29 Atl. 994, already cited, or with that of the supreme court of Michigan in Railroad Co. v. Dolan, 32 Mich. 509. It is held in these cases that the duty of a corporation as master to a servant of using due care in the selection of competent fellow servants is fully discharged when its general or representative officers have exercised due diligence in the selection and appointment of the subordinate officers whose duty it is to employ and discharge servants. These cases are based upon the same view as those in which it is held that a master sufficiently performs his duty to his servant of furnishing reasonably safe machinery and keeping the same in safe repair when he exercises proper and reasonable caution and diligence in the selection of those servants whose duty it is to make the repairs, and to supervise the condition of the machinery. Wonder v. Railroad Co., 32 Md. 418. The supreme court of the United States, in a series of cases, has left nothing to be desired in the clearness with which it has drawn a line of distinction quite at variance with the views of the courts just referred to. Its holding is that, where the law recognizes a positive duty owing from the master to the servant, a violation of such duty creates a liability to the servant, whether it arises from the personal neglect of the master or from that of any subordinate, however inferior, to whom the discharge of such duty may have been delegated by the master. In the case of Railroad Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, it was held that a railroad company was bound to see to it at the proper inspecting station that the wheels of the cars in a freight train about to be drawn out upon the road were in safe and proper condition, and that if the servants to whom it delegated this duty performed it so negligently as to permit a car to go into service, one of the wheels of which had a defect that might have been detected without difficulty, the company was liable for any injury to another of its servants caused by such defect. In Railroad Co. v. Baugh, 149 U. S. 369–

386, 13 Sup. Ct. 914, after referring to the duty of the master to use due care in the selection and maintenance of safe machinery, Mr. Justice Brewer, in delivering the opinion of the court, said:

"That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employé by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty; and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relation of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor. But it may be asked, is not the duty of seeing that competent and fit persons are in charge of any particular work as positive as that of providing safe places and machinery? Undoubtedly it is, and requires the same vigilance in its discharge. But the latter duty is discharged when reasonable care has been taken in providing such safe place and machinery, and so the former is fully discharged when reasonable precautions have been taken to place fit and competent persons in charge."

It is manifest from the foregoing passage that the duty of the master to select fit and competent persons is viewed by the supreme court in the same light as the duty of the master to provide reasonably safe machinery, and that neither duty can be so delegated as to relieve the master from liability for a failure on the part of his subordinate to whom the duty is delegated to exercise proper care in its discharge. See, also, Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590; Hough v. Railroad Co., 100 U. S. 213–218; Fuller v. Jewett, 80 N. Y. 46; Railway Co. v. Brow, 13 C. C. A. 222, 65 Fed. 941. It follows that to the officer who has the power to suspend employés is delegated the discharge of that positive duty which the company owes to each of its servants, to wit, the duty of using reasonable care to retain in its service only competent persons, and of reasonably supervising the work of its servants for this purpose, and that a failure on the part of such officers to discharge this delegated duty to the other servants of the company, resulting in injury to one of them, renders the company liable.

There remains to consider only the objection to the charge with respect to the measure of damages. The charge of the court, as we interpret it, directed the jury to consider as one element of damage the loss of the plaintiff in his earning capacity by reason of his bodily injuries, and to reach the loss of his earning capacity by estimating as near as they could his probable yearly earnings during his entire life, and to give to him a sum which would purchase him a life annuity equal to the difference between the amount which he would have earned each year if he had not been injured and that which he could earn each year in his injured condition. We see no objection to this measure; indeed, we think it technically accurate.

The assignment of error based on the refusal of the court to grant a new trial for newly-discovered evidence of course cannot be sus-

tained. It is too well settled in the federal courts to need the citation of authority that motions for a new trial are addressed to the discretion of the trial court.

· Judgment affirmed, at the costs of the plaintiff in error.